UNITED STATES of America, Plaintiff-Appellee,

v.

James Darnell SMITH, Defendant-Appellant.

No. 83–3436.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 10, 1984.

Decided June 7, 1984.

Certiorari Denied Oct. 1, 1984. See 105 S.Ct. 213.

John Paul Rieser (argued), Dayton, Ohio, for defendant-appellant.

Robert C. Brichler (argued), Asst. U.S. Atty., Dayton, Ohio, for plaintiff-appellee.

Before EDWARDS and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

PER CURIAM.

This case is currently before the Court upon James Darnell Smith's appeal from his district court jury conviction for armed robbery, pursuant to 18 U.S.C. §§ 2113(a), (d) and 2. On appeal, Smith contends that the district court erred in refusing to allow expert witness testimony about the reliability of eyewitness identification. Upon consideration of this perplexing legal question, we are unable to find that the district court committed reversible error in excluding that testimony.

On July 22, 1982, two armed men entered the Arcanum branch of the Second National Bank of Greenville in Arcanum, Ohio. Two tellers and the branch manager were in the bank. One of the men announced a robbery and instructed the employees to lie face down on the floor. Teller Diane Flory was able to observe one of the men for two to three minutes as he grabbed her. Teller Suzanne Anderson was able to observe the men for almost four minutes. Linda Newbaur, the bank's manager, was forced by the "shorter robber" to enter the vault and to lie face down. When the man tried to remove her rings, Newbaur observed that he was not wearing gloves. After they were unable to open the time-delay vault, the robbers fled on foot. The three women could not see the fleeing men through the windows of the bank.

After the robbery, Deputy Sheriff Toby Spencer took a palm print from the counter of a middle teller station, where the two men had vaulted. F.B.I. fingerprint exam-

iner Benjamin Moore examined the print and concluded that it belonged to appellant Smith. The employees also gave the police descriptions of the men. About three weeks after the robbery, the employees were shown a photo-spread of six photos. One of the photos was of Smith and another was of Marcellus Edwards, who has since been convicted of this robbery. Manager Newbaur identified Edwards. Not one of the employees, however, could identify appellant Smith.

On November 19, 1982, nearly four months later, the FBI requested that three employees view a line-up. At the line-up, all three women identified Smith. The grand jury indicted Smith on February 15, 1983. After a trial before Judge Walter Rice, the jury returned a guilty verdict and Smith was sentenced to 12 years imprisonment.

At trial, the government's case consisted of the employees' eyewitness testimony and the fingerprint expert's testimony. In his defense, Smith testified that he had never been to Arcanum, Ohio and that he had no knowledge of the robbery. Smith's 13-year old niece testified that she ate breakfast with him at the time of the robbery. Venita Faircloth remembered breakfast because Smith gave her a "crumpled ten-dollar bill" as a birthday present.

The defense also sought to introduce the testimony of psychologist Solomon M. Fulero as an expert in the field of eyewitness identification in order to rebut the eyewitness' testimony. Out of the presence of the jury, the district judge heard arguments and proffers on the admissibility of Fulero's testimony. The government conceded that Fulero was an expert, but the district court ruled that the testimony was inadmissable pursuant to Federal Rule of Evidence 403. The district court's decision to exclude that testimony is the subject of this appeal.

In *United States v. Green,* 548 F.2d 1261 (6th Cir.1977), this Court adopted four criteria for review of trial court decisions involving expert testimony: (1) qualified expert, (2) proper subject, (3) conformity to a generally accepted explanatory theory, and (4) probative value compared to prejudicial effect. *See also United States v. Brown,* 557 F.2d 541 (6th Cir.1977).

The government concedes that Dr. Fulero is an expert. We must first decide, then, whether his testimony involved a "proper subject." The district judge found that Fulero's testimony was not a "proper subject" because it "would not assist the jury in determining the facts at issue." Federal Rule of Evidence 702 allows the admission of such testimony where it "will assist the trier of fact to understand the evidence or to determine a fact in issue." A "proper subject" therefore is one that *assists* the trier of fact. The advisory committee notes to Rule 702 state that

> There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in that dispute.

In keeping with this test, the district court concluded that "the proferred testimony would not assist the jury in determining the facts at issue." Dr. Fulero's testimony would have provided insight into an eyewitnesses' general inability to perceive and remember what is seen under a stressful situation. Smith argues that such insight is not within the "common sense" of the jury; indeed, it explodes common myths about an individual's capacity for perception under stress. The district court, however, concluded that the "jury is fully capable of assessing the eyewitnesses' ability to perceive and remember."

That conclusion is consistent with the First Circuit's treatment of the "proper subject" standard in *United States v. Fosher,* 590 F.2d 381 (1st Cir.1979). In that case, the Court was confronted with the identical situation and concluded:

> Admittedly, lay jurors may not have the best possible knowledge of the organic

and behavioral mechanisms of perception and memory. But to be a proper subject of expert testimony, proof offered to add to their knowledge must present them with a system of analysis that the Court, in its discretion, can find reasonably likely to add to common understanding of the particular issue before the jury.

*Fosher*, 590 F.2d at 383.

The case before us is, however, distinguishable from *Fosher* in significant respects. In *Fosher*, the defendant's proffer "did not make clear the relationship between the scientific evidence offered and the specific testimony of the eyewitnesses. Rather, the offer proclaimed that the expert will not comment at all ... on the testimony of any named witness." Dr. Fulero, by contrast, offered proof based upon the *facts* of this case. (Tr. pp. 99–105). In his proffer, Dr. Fulero analyzed the reliability of eyewitness identification in a hypothetical factual situation identical to this case. In the hypothetical, three witnesses were shown a line-up containing the defendant and four months later they were shown a photospread containing the same defendant. The defendant was the only "common" element in each showing. Dr. Fulero offered that the later line-up was not "independent" of the earlier photospread and that the eyewitnesses "incorrectly transferred" the "familiar" figure from one procedure to the next. What they identified was the picture of the defendant at the earlier photospread, not the figure of him at the bank. Such testimony might have been relevant to the exact *facts* before the court and not only might have *assisted* the jury, but might have refuted their otherwise common assumptions about the reliability of eyewitness identification.

Dr. Fulero also might have provided insight outside the jury's "ken" about the possibility of cross-racial misidentification. The bank robbers in this case were two black males, while the eyewitnesses were three white females. Manager Newbauer testified that few black families live in Arcanum and that "it is unusual for black customers to come to the bank." In this situation, Dr. Fulero testified, the reliability of eyewitness identification would be minimized. He also stated that the existence at the bank of a weapon and stress would decrease the possibility of proper identification. The proffer in this case, therefore, demonstrated that Dr. Fulero's testimony may have assisted the factfinder understand the *facts of this case.*

The district judge concluded, in addition, that a sufficient proffer had not been made to show that Dr. Fulero's research "is a Science containing enough of a degree of exactness or exactitude to render his opinion admissible." Dr. Fulero testified, however, that the American Psychological Association developed a sub-field in the area of eyewitness identification and that his discipline contains the exactness, methodology and reliability of any psychological research. Further, Dr. Fulero and another expert in the field, Dr. Loftus, have appeared as experts in over 60 criminal cases. Indeed, the government never contested Fulero's expertise.

The Government again relies upon *Fosher* for the exclusion of such testimony. In *Fosher*, the Court found that the district court could have concluded in 1979 that the level of reliability of the expert testimony had not surpassed the quality of common sense evaluation. 590 F.2d at 383. Four years later, Dr. Fulero's science has gained reliability. Moreover, his testimony would not only "surpass" common-sense evaluation, it would question common-sense evaluation. This Circuit has been particularly mindful of the dangers of misperception in criminal cases and has itself relied upon psychological studies of the problems of misidentification and suggestion. In *United States v. Tyler*, 714 F.2d 664, 667, this Court relied upon psychological studies for the proposition that the danger of misidentification "is inherent in every identification." *Citing, United States v. Russell*, 532 F.2d 1063 (6th Cir.1976). We concluded that "courts should be especially vigilent to make certain that there is no further distortion." *Russell*, 532 F.2d at 1066. We reached that conclusion in *Russell*

based upon the scientific research of Buckhout in "Eyewitness Testimony," 231 *Scientific American* 23 (Dec. 1974). In summarizing and adopting Buckhout's findings, the *Russell* Court declared:

> Witnesses focus on gross or salient characteristics of any sensory experience, and fill in the details, not according to the observed facts of the experience, but according to some previously internalized pattern they associate with the perceived gross characteristics. In addition, the construction of memory is greatly influenced by post-experience suggestion. Suggestions compatible with the witness' internalized sterotype are likely to become part of the witness' memory, not because they are in fact similar to the actual experience, but because they fit the preconceived stereotype.

532 F.2d at 1066. The day may have arrived, therefore, when Dr. Fulero's testimony can be said to conform to a generally accepted explanatory theory.

■ The final *Green* test requires the reviewing court to balance the probative value of the evidence against the prejudicial effect. This balancing is identical to the Rule 403 balancing. In this Circuit, evidence may be excluded pursuant to Rule 403 only where its relevance is "substantially outweighed by the danger of unfair prejudice." *United States v. Hans*, 684 F.2d 343 (6th Cir.1982). In *United States v. Brady*, 595 F.2d 359 (6th Cir.), *cert. denied*, 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979), this Court stated that in reviewing a 403 balancing, the court "must look at the evidence in the light most favorable to the proponent, maximizing its probative value and minimizing its prejudicial effect."

■ The "relevance" of Dr. Fulero's testimony may have been established in his proffer that it would involve a "proper subject." The prejudice envisioned by Rules 403 and 702 is prejudice to a criminal defendant. Our decision in *United States v. Green*, which initially established the four-factor test for expert testimony, involved the *government's* offer of proof.

The rigidity of the factors ensures that the *defendant* will receive a fair trial. In *United States v. Brown*, 557 F.2d 541 (6th Cir.1977), this Court observed that the clear trend in federal courts is toward admission of expert testimony whenever it will aid the trier of fact, but warned that "a strong countervailing restraint on the admission of expert testimony is the defendant's right to a fair trial." That "countervailing restraint" is not present in the case before us.

Moreover, in *Mannino v. International Manufacturing Co.*, 650 F.2d 846 (6th Cir. 1981), we held that an "appellate court will not hesitate to step in" where it can be shown that the trial court erred in *excluding* expert testimony. In that case, we also warned that the requirements of Rule 702 are "broadly phrased, and an expert is viewed not in a narrow sense, but very broadly." 650 F.2d at 849.

■ In the case before us, however, we "hesitate to step in" because even if it were error to exclude the expert's testimony, such error was "harmless" to the defendant. *See Hamling v. United States*, 418 U.S. 87, 135, 94 S.Ct. 2887, 2916, 41 L.Ed.2d 590 (1974). The government presented *three* eyewitnesses who identified *Smith* as the bank robber. The government also presented uncontroverted evidence that Smith's palmprint was found at the bank. The expert testimony would have done little to discredit the testimony of three eyewitnesses, each of whom independently identified Smith at a line-up. More significantly, however, the existence of Smith's palm print at the Arcanum bank by itself wholly discredited his alibi defense. Smith's trial defense was that he had never in his entire life been in the robbed bank. Evidence of his palm print found at the bank flies directly in the face of his alibi defense. The exclusion of Dr. Fulero's testimony under the particular facts of this case, therefore, was not "prejudicial" to the defendant. We can not conclude that "it is more probable than not the [exclusion] affected the verdict." *United States v. Rasheed*, 663 F.2d 843 (9th Cir.)

*cert. denied,* 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982). Although we find that Dr. Fulero's expert testimony may have involved a "proper subject," conformed to a "generally accepted explanatory theory" and provided "probative value," we conclude that its exclusion in this particular case, therefore, did not "prejudice" the defendant to the extent of affecting the verdict and therefore was harmless.

Accordingly, the judgment of the district court is hereby AFFIRMED.

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge, concurring.

I concur in the result reached by The Court in this case. I do not, however, agree that the trial judge was in error in excluding the proffered testimony of an expert witness offered by the defense.

Inspection of the photograph display from which no witness made any identification, and the photograph of the show-up from which three eyewitnesses made identification of the appellant, does not in my view lend support to the proposed assertion that exposure of the witnesses to photographs of six men of generally similar facial characteristics preconditioned the witness toward mistaken identification of appellant at the line-up so as to make them "unreliable."

I am aware that eyewitness identification in violent crime situations, and perhaps particularly in cross-racial crimes, presents possibilities of mistaken identification as to which an expert witness with the qualifications of Dr. Fulero could appropriately caution a jury. Three or four separate characterizations of these three eyewitnesses as "unreliable," however, appears to me (as it must have to the trial judge) to be such overstatement as to be of dubious assistance to the jury.

Recent amendments to the Federal Rules of Evidence have certainly made expert testimony more acceptable in federal trials. For example, Rule 702 of the Federal Rules of Evidence provides:

**Rule 702. Testimony by Experts**

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

I do not, however, believe that Rule 702 has eliminated trial judge discretion. On that assumption, I would hold that Judge Rice's exclusion of Dr. Fulero's proffered evidence was not an abuse of judicial discretion.