837 F.2d 477
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marion COLLINS, Defendant-Appellant.
 No. 87-5077.
 United States Court of Appeals, Sixth Circuit.
 Jan. 25, 1988.
 
 Before KEITH and WELLFORD, Circuit Judges, and HULL, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Marion Collins appeals his conviction for a number of armed robberies of federal savings and loan associations. 18 U.S.C. Sec. 2113(a). For the reasons set out below, we affirm the conviction.
 
 I.
 
 2
 This case arises from a series of seven robberies of federal savings and loan organizations ("banks") in the Louisville, Kentucky area. Each robbery was committed in the same manner: a black man would walk into the bank, pull a gun, and flee on foot after taking all the money in the teller's drawer. The first of the robberies occurred on December 19, 1985 and they continued at a rate of approximately one each month until June 19, 1986.
 
 
 3
 Three banks were robbed twice. The Cumberland Federal Savings and Loan's Preston Street branch was struck by a lone gunman on December 19, 1985 and again on February 28, 1986. The Cherokee Triangle branch was robbed January 9 and April 22, 1986. The Highlands branch was victimized on February 11 and May 19, 1985. Repetitions of these robberies enabled several bank employees to witness two robberies and identify Collins as the man who committed them. In all, nine eyewitnesses were able to testify that Collins, a probationary officer with the Louisville police, was the robber involved. Three acquaintances of Collins were able to identify him from bank surveillance photographs as well.
 
 
 4
 In addition to eyewitness testimony, the government produced the testimony of FBI agent David Clark, who stated he had seen a black man matching the description given of the robber driving away from one of the banks shortly after the robbery occurred. Clark was able to observe the license number from the car, and it matched the license number issued to Collins.
 
 
 5
 Other circumstantial evidence included testimony that clothing matching that worn by the robber was found in Collins' house and car. Friends reported that he had displayed a sudden rash of wealth during the crime wave, making several expensive purchases during the time in question. Finally, Collins' employer stated that he was not working during the times of any of the robberies and his whereabouts were unknown at those relevant times.
 
 
 6
 In his defense, Collins sought to show that he was not in Louisville at the time of the robberies; that the money he had during that time came from other sources, and that his license plate had been stolen before agent Clark saw it on the car fleeing the crime scene.
 
 
 7
 Collins also sought to introduce the testimony of a forensic psychologist, Dr. Meyer, who was prepared to testify that eyewitnesses can be unreliable because of a pychological tendency to "fill in" gaps in perception. The district court refused to admit this testimony because Dr. Meyer was not listed as a witness in accordance with the pretrial order. The court also refused to admit photographs of Collins' car, and denied defendant's motion to sever certain counts from the trial.
 
 
 8
 The jury found Collins guilty based on the evidence, and he now appeals.
 
 II.
 
 9
 Collins' primary claim involves the district court's refusal to permit Dr. Meyer to testify as an expert in his defense. Dr. Meyer offered as evidence that eyewitnesses who are "certain" that the defendant had committed robberies may possibly have been influenced by factors unrelated to what they saw at the time they were witnesses. Examples of such factors are the suggestiveness of robbery photographs seen later; a witness' psychological tendency to fill in incomplete memories with details learned later; as well as a tendency to focus primarily on a weapon when used.[1] When defense counsel attempted to admit Dr. Meyer's testimony, the government objected that it would be unfairly prejudiced because it had not been told Dr. Meyer would be called prior to trial as required by the court's discovery order. The district court ruled Dr. Meyer could not testify because defense counsel was on notice that the government was going to introduce eyewitness testimony and failed to produce an expert in rebuttal in a timely manner. The district court did not state any other reason for its decision to exclude the witness.
 
 
 10
 Collins claims this action was error based on language in United States v. Smith, 736 F.2d 1103 (6th Cir.1984) (per curiam). In Smith we faced the issue of whether an expert could be qualified to testify concerning unreliability of eyewitness testimony. We concluded that such psychological evidence may be "generally accepted explanatory theory," the subject of expert testimony, and could be the basis for expert testimony provided all of the other admissibility requirements of Rules 401 and 403 were met.[2] Id. at 1105-1107. We did not direct admission of such evidence, nor did we remove such questions from the discretion of the trial court, as Collins' argument implies.
 
 
 11
 Here, however, no admissibility determination was made. Instead of admitting or excluding Dr. Meyer's testimony based on the requirements set out in United States v. Green, 548 F.2d 1261 (6th Cir.1977), the district court excluded the testimony because the witness was not on the list of witnesses included as part of the pretrial order. The government attorney did not on appeal argue that there was a proper basis for exclusion. A criminal defendant's relevant evidence may generally not be excluded on the basis of a discovery sanction. The defendant's sixth amendment right to an effective defense will usually outweigh the interests served by pretrial discovery orders. United States v. Davis, 639 F.2d 239 (5th Cir.1981). See also Fendler v. Goldsmith, 728 F.2d 1181 (9th Cir.1984), and United States ex rel. Enoch v. Hartigan, 768 F.2d 161 (7th Cir.1985). Thus, if Dr. Meyer's testimony were deemed to be relevant for purposes of Green, the district court erred in excluding it solely because defendant had failed to conform to discovery requirements.
 
 
 12
 In this case, however, we are not prepared to say as a matter of law that Dr. Meyer's testimony was relevant under the circumstances. Smith, supra. Assuming that it was, we find no error requiring reversal. The government was able to produce very substantial evidence identifying Collins as the robber. The existence of three eyewitnesses caused this court to find harmless error in excluding that type of testimony in Smith, 736 F.2d at 1103. In addition to eyewitness testimony, the government introduced circumstantial evidence pointing to Collins as the repeat offender using a similar modus operandi. We are persuaded that the error, if any, committed here was harmless. Hamling v. United States, 418 U.S. 87, 135 (1974); Chapman v. California, 386 U.S. 18 (1967).
 
 III.
 
 13
 Collins' next claim is that his sixth amendment rights were violated when the district court gave the jury a so-called Allen-type of charge as discussed in Allen v. United States, 164 U.S. 492 (1896). We find no error in this action.
 
 
 14
 The record reflects that the jury began its deliberations on December 11, 1986 and was still undecided at noon on December 15 when they announced they might be deadlocked. The district judge gave the jury the following charge:
 
 
 15
 BY THE COURT: Take seats in the jury box, please.
 
 
 16
 Now, ladies and gentlemen, it's been reported to me that you have agreed upon a verdict in one of the charges and that you are deadlocked in the others.
 
 
 17
 Now, I do not want to know how you think--please do not tell me what your numerical division is. But I must admonish you that, as you know, this case has taken a considerable length of time to try. It has been a long trial. The evidence has been voluminous. And I want to tell you that as jurors it is your duty to consult with one another and to deliberate in an attempt to reach an agreement, and if you can do that without violence to your own personal judgment. You must decide the case for yourselves, but only after you've given a complete and impartial consideration to all of the evidence.
 
 
 18
 In the course of your deliberations, if it appears that perhaps any of you should stop and re-examine his or her views about the evidence which you've heard, and if you become convinced that perhaps the position which you've taken is wrong, you should probably change your position.
 
 
 19
 I do not want you under any circumstances to surrender your honest conviction as to the weight of the evidence or to the effect of the evidence solely because the other jurors may outnumber you. But you are not deliberating--you are to decide the facts based upon the evidence that you've heard, not upon any other personal opinions which you might have. And your sole interest is to find the truth of the evidence which has been presented to you over the past number of days.
 
 
 20
 Now, you know what your deliberations have been and, of course, no one here does, and you know whether in good conscience those of you who may be in the minority--I again caution you, I don't want to know how you stand; I must ask you not to tell me how you stand, but if you think that perhaps a re-examination of your position might lead you to be able to return a verdict on the counts on which you apparently at this point are at least deadlocked, I will ask the foreman, do you think there is any chance that the re-examination by the jury of the positions that they're all taken that you might be able to reach a verdict?
 
 
 21
 JURY FOREMAN: I would love to think so, but--
 
 
 22
 BY THE COURT: (Interrupting) Well let me suggest this. You all retire and re-examine the position that each of you have taken, and each of you--I'm not going to tell you how to conduct your deliberations; that would be improper--but may I suggest that each of you express to the other members of the panel as to why you feel the way you feel, and perhaps with that discussion--and do it without interruption from the other members of the panel, let each member of the panel express his or her opinion about the evidence and why that particular juror feels the way that he or she does without interruption, without criticism or without rancor on the part of any members of the panel.
 
 
 23
 If by twelve-thirty you have not been able to resolve your conflict, notify me, and we'll bring you back down and we'll either send you to lunch or we'll talk some more about it.
 
 
 24
 So let me ask you to go back and deliberate until twelve-thirty, and then we'll bring you back down and see where we are at that time.
 
 
 25
 Now, that's going to mean, again, packing all these exhibits back upstairs. But the Marshal doesn't mind doing that a bit. He loves to climb up and down the stairs with exhibits.
 
 
 26
 So you all go back and give it some more deliberation until twelve-thirty, and we'll call you back and see where you are at that time.
 
 
 27
 Mr. Marshal, if you'll take them back to the juryroom.
 
 
 28
 We have held that an Allen charge is permissible. Williams v. Parke, 741 F.2d 847 (6th Cir.1984), cert. denied, 470 U.S. 1029 (1985). In Williams the court reiterated that it would allow Allen charges, but that variations from the instruction given in that case would be carefully examined. Id. at 880.
 
 
 29
 We conclude that the change given in this case did not violate any constitutional right of the defendant and was not demonstrated to be prejudicial to the defendant.
 
 IV.
 
 30
 Collins makes other charges of error, none of which we find to have merit. First he claims that the trial court committed error when it denied his motion to sever. The standard of review for such denials is abuse of discretion. United States v. Licavoli, 725 F.2d 1040, 1051 (6th Cir.), cert. denied sub nom Calendia v. United States, 467 U.S. 1252 (1984); United States v. Goldfarb, 643 F.2d 422, 434 (6th Cir.), cert. denied, 454 U.S. 827 (1981). In order to make out such clear error the defendant must make a strong showing of prejudice resulting from the failure to sever. Licavoli, id. Opper v. United States, 384 U.S. 84, 94 (1954). Collins has made no such showing here.
 
 
 31
 Specifically, Collins' claim of error is that the district court refused to sever counts 1-4, the first two robberies, from the others. He claims that there was much less evidence connecting him with these robberies, and the fact that the jury took so long to decide his case he says is evidence that "the jury convicted the Appellant based upon their belief that he must have been guilty of these two charges because of bad character and reputation." This contention is contradicted by the fact that three witnesses at the first two robberies--Schumacher, Forrest and Thomas--though not able to identify the robber after the first robbery, stated that they recognized Collins as the criminal offender in the second robbery, and also stated their opinion that it was also he who committed the first holdup. Collins has not made the strong showing of prejudice required. See United States v. Williams, 711 F.2d 748, 751 (6th Cir.), cert. denied, 464 U.S. 986 (1983); United States v. Frazier, 584 F.2d 790, 795 (6th Cir.1978) ("The jury must be presumed capable of sorting out the evidence and considering the case of each defendant separately"). Therefore, this claim must fail.
 
 
 32
 Collins also claims error in the trial court's failure to allow into evidence photographs made by the defense showing that his car windows were too dark for anyone to have seen him inside. This evidence sought to rebut the testimony of David Clark, who stated he thought he saw a black man with a baseball cap inside as he was going to the scene of the last robbery. The record shows that the district court was of the opinion that this was scientific evidence, subject to its discovery order but not given to the government prior to trial. Apparently, it was not only kept out because of the failure to abide by the ordler, but also because it was not relevant as scientific evidence. Because the district court properly exercised its wide discretion in refusing to admit this exhibit, we find no error on this point.
 
 V.
 
 33
 For the reasons set out above, we AFFIRM the decision and verdict subject to this appeal.
 
 
 
 *
 THE HONORABLE THOMAS G. HULL, United States District Court for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 Dr. Meyer was permitted by the district court to testify out of the presence of the jury for the sake of making a record
 
 
 [2]
 We stated in Smith that "[T]he day may have arrived ... when Dr. Fulero's testimony [a psychologist offered as an expert] can be said to conform to a generally accepted explanatory theory." 736 F.2d at 1107. Judge Edwards, concurring in the result that exclusion of such testimony was not error, was of the opinion that this was a matter of the trial court's "judicial discretion." Id. at 1108