**James MOORE, Petitioner–Appellee,**

v.

**Arthur TATE, Jr., Superintendent, Respondent–Appellant.**

No. 88–3808.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 16, 1989.

Decided Aug. 24, 1989.

Rehearing and Rehearing En Banc Denied Oct. 10, 1989.

Gwendolyn R. Bowers (argued), Dayton, Ohio, for James Moore.

Stuart A. Cole, Asst. Atty. Gen. (argued), Columbus, Ohio, for Arthur Tate, Jr., Supt.

Mathias H. Heck, Carley J. Ingram, Dayton, Ohio, for State of Ohio, amicus curiae.

Before KENNEDY and JONES, Circuit Judges, and SILER, District Judge.*

PER CURIAM.

Respondent appeals from the district court's grant of a writ of habeas corpus under 28 U.S.C. § 2254 (1982). Respondent contends that the district court erred in concluding that the state trial court's exclusion of certain expert testimony violated

---

* The Honorable Eugene E. Siler, Jr., Chief Judge for the Eastern District of Kentucky, sitting by designation.

petitioner's due process rights. After careful consideration, we find that petitioner was not denied due process, and therefore reverse the judgment below.

## I.

In the early morning hours of July 20, 1984, Janice Wheeler was raped in her Dayton, Ohio apartment by an armed intruder. At approximately 3:10 a.m., Wheeler awakened from her sleep to find the intruder standing at the foot of her bed. When Wheeler asked the intruder who he was, he told her to be quiet. The intruder then climbed into Wheeler's bed and, after commanding her to remove her clothes while putting a knife to her throat, had sexual intercourse with her until he ejaculated. After warning Wheeler not to call out for help, the intruder left the apartment. After waiting a few minutes, Wheeler went to a neighbor's apartment for help. When the police arrived, Wheeler described her attacker as a black male in his late twenties, with medium brown skin, between 5′8″ and 5′10″, and weighing from 160–175 pounds. After giving her statement to the police, Wheeler was taken to the hospital where she was physically examined. The examination confirmed her rape report.

Wheeler participated in three lineups at the Dayton Police Department. At the first lineup on August 27, 1984, Wheeler identified one Nathaniel Pittman as her attacker. At the second lineup, she identified no one. Finally, at the third lineup on October 18, 1984, Wheeler identified the petitioner, James Moore, as the man who raped her. Wheeler also later identified Moore from a photo spread. Moreover, after identifying Moore at the third lineup, Wheeler told police investigators that her attacker was left-handed. Significantly, investigators later learned that Moore is left-handed.

In February 1985, an Ohio grand jury indicted Moore for rape and aggravated burglary. At the *voir dire*, defense counsel, explaining that Moore's defense theory would be mistaken identity, attempted to examine the potential jurors to learn what they had heard or read concerning the reliability of eyewitness testimony. The State, however, objected to this line of questioning, and the trial judge generally sustained those objections. Moore's counsel also filed a pre-trial motion *in limine*, seeking to present an expert witness on eyewitness identification. The judge preliminarily denied the motion but said that he would make a final decision at an "appropriate time" during the trial.

At the trial, the State's evidence consisted primarily of the following three facts: that Moore's blood type and pubic hairs were "consistent with" those of Wheeler's attacker; that Moore was left-handed, as was the attacker; and most significantly, that Wheeler had identified Moore as her attacker. Wheeler again identified Moore as her attacker at trial, testifying that she had viewed the attacker for 5 to 7 minutes at a distance of less than a foot. Wheeler also explained that although she had identified Pittman at the first lineup on August 27, 1984, she had expressed some doubt about this identification. Wheeler stated that she identified Pittman only because he bore "many similarities" to Moore.

After the State rested, the trial court made a final ruling denying Moore's motion *in limine* which sought to present expert testimony on eyewitness identification. In response, defense counsel proffered the expert's testimony, explaining that the expert would have testified about specific factors which have been shown to affect eyewitness identifications. Defense counsel then proceeded to present Moore's case. Significantly, Ada Day, an employee of the Montgomery County Prosecutor's Office, testified that Wheeler had unequivocally identified Pittman as her attacker at the lineup on August 27, 1984.

In her proposed jury instructions, defense counsel requested that the jury charge from *United States v. Telfaire*, 469 F.2d 552, 558–59 (D.C.Cir.1979), be given in this case. The *Telfaire* charge specifically and comprehensively instructs the jurors about factors affecting the reliability of eyewitness identification. The trial judge denied this request, however, and gave instructions on eyewitness identification that

were much less comprehensive than those provided in *Telfaire*.

Moore was ultimately convicted on both counts, and was sentenced to two concurrent terms of imprisonment—one for eight to twenty-five years on the rape count, and the other for five to twenty-five years on the aggravated burglary count. Moore appealed his conviction to the Montgomery County (Ohio) Court of Appeals, arguing, *inter alia*, that the trial court erred in not allowing the expert's testimony.[1] The appeals court rejected this argument and concluded that the trial court had not abused its discretion in excluding this evidence. Moore then appealed to the Ohio Supreme Court, which summarily denied him leave to appeal.

On August 12, 1986, Moore filed a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254 (1982). The writ set forth eight grounds for relief, five of which centered around the trial court's refusal to allow the expert's testimony. The remaining three arguments concerned the *voir dire* examination, the eyewitness jury instruction, and the weight of the evidence. The parties subsequently agreed to have the case decided by a magistrate, without a hearing, pursuant to 28 U.S.C. § 636(c) (1982). On August 16, 1988, the magistrate conditionally granted Moore's petition. The magistrate found that the trial court, in excluding the expert's testimony, violated Moore's constitutional right to introduce evidence in his own behalf. Accordingly, the magistrate ordered Moore's release "unless he is granted a new trial within ninety days at which [the expert's] testimony or the equivalent is permitted to be introduced."[2] The State then filed a timely notice of appeal and a motion to stay execution of the judgment pending appeal. The motion to stay execution was granted by this court on September 22, 1988.

## II.

The sole issue before this court is whether the state trial court's exclusion of the proffered expert testimony denied Moore a fundamentally fair trial. It is well established that "[w]hile habeas review does not ordinarily extend to state court rulings on the admissibility of evidence ... an erroneous evidentiary ruling which renders a trial fundamentally unfair warrants a writ of habeas corpus." *Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir.1985). *See also Pulley v. Harris*, 465 U.S. 37, 43, 104 S.Ct. 871, 875–76, 79 L.Ed.2d 29 (1984); *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.), *cert. denied*, 464 U.S. 951, 104 S.Ct. 367, 78 L.Ed.2d 327 (1983). Thus, in passing upon the instant habeas petition, we do not purport to decide whether the state trial court's evidentiary ruling was correct. Rather, our inquiry is limited to determining whether that ruling denied Moore a constitutionally guaranteed right.

In granting habeas relief, the district court found that the exclusion of the expert testimony, when considered together with the *voir dire* limitation and the refusal to give the *Telfaire* instruction, denied Moore a fundamentally fair trial. Specifically, the district court found that the expert's testimony was critical to the jury's evaluation of Wheeler's testimony, and that the exclusion of this testimony therefore violated Moore's right to introduce evidence on his own behalf. On appeal, the State argues that, at most, the state trial judge made a mistaken evidentiary ruling that does not rise to constitutional proportions.

---

1. Moore appealed three other issues as well. He argued that the trial court erred in limiting defense counsel's *voir dire* examination and in failing to give the requested jury instruction, and that the jury's verdict was against the weight of the evidence.

2. The district court, however, rejected Moore's separately asserted arguments relating to the *voir dire* limitation and the *Telfaire* jury instruction because Moore's counsel did not include them in his appeal to the Ohio Supreme Court, thereby failing to exhaust his state remedies. In addition, the district court refused to consider the weight-of-the-evidence argument because it was couched in state law terms. However, treating this argument as a sufficiency-of-the-evidence argument, the district court rejected it on the merits. Moore does not challenge the district court's rulings on these issues.

In testifying, the expert would have informed the jurors about various factors affecting the reliability of eyewitness testimony. Specifically, the expert was prepared to inform the jurors about a generally accepted scientific theory that examines variables in memory reconstruction. The general theory posits that humans do not precisely remember and reproduce past events verbatim, as if their minds were video recorders. Rather, this theory propounds, the mind collects and stores all information, and in remembering, reproduces all available data, some of which may include information gathered after the specific event that is supposedly being remembered. The expert would have also identified specific areas which might have affected Wheeler's identification of Moore in this case.[3]

In not allowing the expert's testimony, the state trial court relied primarily upon *State v. Sims*, 3 Ohio App.3d 321, 445 N.E.2d 235 (1981). The *Sims* court held that expert testimony regarding the reliability of eyewitness identification was inadmissible under the Ohio Rules of Evidence because "the field of experimental psychology is [not] able to assist the trier of fact in making a correct determination concerning the accuracy of a particular identification by an eyewitness." 3 Ohio App.3d at 326, 445 N.E.2d 235. The *Sims* decision was partially overruled in *State v. Buell*, 22 Ohio St.3d 124, 489 N.E.2d 795, *cert. denied*, 479 U.S. 871, 107 S.Ct. 240, 93 L.Ed.2d 165 (1986), however, wherein the Ohio Supreme Court held that such expert testimony is admissible when its purpose is to inform the jury about factors that generally affect the memory process. The district court in this case thus properly relied upon *Buell* for the proposition that " 'expert testimony of an experimental psychologist concerning the variables or factors that may impair the accuracy of a typical eyewitness identification is admissible under [Ohio] Evid.R. 702.' " J.App. at 126 (quoting *Buell*, 489 N.E.2d at 798).

The district court also relied upon our decision in *United States v. Smith*, 736 F.2d 1103 (6th Cir.), *cert. denied*, 469 U.S. 868, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984). In *Smith*, a federal district court excluded expert testimony on eyewitness identification, reasoning that the testimony would not help the jurors to determine the facts, and therefore was inadmissible under Fed. R.Evid. 702. On appeal, this court found that the expert's testimony met the criteria for admissibility under Rule 702; however, because of overwhelming, countervailing evidence against the defendant, we concluded that the exclusion was, at most, harmless error. The district court in this case apparently interpreted our decision in *Smith* to mean that, under proper circumstances, the exclusion of such expert testimony could result in reversible constitutional error.

We find the district court's reliance on the *Buell* and *Smith* decisions to be misplaced. For while those decisions hold that expert testimony concerning eyewitness identification is admissible in some circumstances, neither of those decisions rests upon federal or state constitutional grounds. Moreover, while there are other decisions holding that such expert testimony is sometimes admissible, *see, e.g., United States v. Downing*, 753 F.2d 1224 (3rd Cir.1985); *People v. McDonald*, 37 Cal.3d 351, 690 P.2d 709, 208 Cal Rptr. 236 (1984); and *State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208 (1983), these decisions also do not rest upon federal or state constitutional grounds. Thus, we find no direct support in the case law for the district court's decision in this case.

We do not believe that the state trial court committed *constitutional* error in ex-

---

**3.** Addressing specific tendencies of some witnesses, the expert was prepared to testify regarding: witness' tendency to overestimate the length of time of the events being remembered; the detrimental effect of high stress on one's ability to remember an event; the tendency of victims to focus their attention on a weapon; the difficulty of whites to identify particular blacks; the "forgetting curve"; and the tendency for persons to unconsciously transfer identification from one setting to another. Finally, the expert was prepared to offer testimony refuting the myth that a person's degree of confidence in identifying someone directly correlates to the accuracy of that identification.

cluding the expert's testimony. For in our view, the examination and cross-examination of Wheeler at trial afforded the jury an adequate opportunity to assess the reliability of her identification of Moore. The record reflects that the examination of Wheeler at trial was thorough, including questions regarding her eyesight, the amount of light in her bedroom during the attack, her proximity to the attacker, and her prior identification of Pittman. In spite of this, the jurors concluded that Wheeler properly identified her attacker. While the expert's testimony may well have given the jurors another perspective from which to assess Wheeler's testimony, we do not believe that this perspective was constitutionally required.

### III.

For the above-stated reasons, the district court's judgment is hereby REVERSED.