968 F.2d 1212
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Luis CARBARCAS-A, a/k/a Lucho, Defendant-Appellant.
 No. 91-5116.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 3, 1992
Decided: July 9, 1992
 
 Argued: James Frank Wyatt, III, Charlotte, North Carolina, for Appellant.
 Max Oliver Cogburn, Jr., Assistant United States Attorney, Asheville, North Carolina, for Appellee.
 On Brief: Thomas J. Ashcraft, United States Attorney, Asheville, North Carolina, for Appellee.
 Before WILKINSON, Circuit Judge, and BUTZNER and CHAPMAN, Senior Circuit Judges.
 OPINION
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Luis Carbarcas-A appeals his conviction for conspiracy to possess and distribute more than one thousand pounds of marijuana and two million methaqualone tablets, possession and distribution of marijuana and methaqualone, and knowingly engaging in a continuing criminal enterprise. We affirm the conviction on all counts but set aside the 15-year sentence for the conspiracy count.
 
 
 2
 * Carbarcas-A's primary assignment of error is the district court's exclusion of testimony by an eyewitness identification expert. The expert proffered by Carbarcas-A would have testified that stress decreases the ability of a witness to recall someone reliably and that confidence in identification does not correlate with accuracy. Carbarcas-A sought to use the expert to refute the testimony of three witnesses, one of whom was Tony Mathis. He testified that he was at a stressful meeting with Carbarcas-A almost ten years earlier in which the conspirators settled a disagreement over payment for marijuana. The other two witnesses were North Carolina State Bureau of Investigation agents. One of the agents explained the procedures he used when showing photographic arrays to Mathis. The other agent testified that he had seen Carbarcas-A meet with another coconspirator in 1981 at the Charlotte airport.
 
 
 3
 Other prosecution witnesses testified that they had known Carbarcas-A for many years. They had dealt with him in a number of drug deals, and one of them had stayed in his house for a few days.
 
 
 4
 Federal Rule of Evidence 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify thereto in the form of an opinion or otherwise." We review a district court's decision whether to admit expert eyewitness identification testimony for abuse of discretion. United States v. Moore, 786 F.2d 1308, 1312 (5th Cir. 1986); United States v. Christophe, 833 F.2d 1296, 1299 (9th Cir. 1987).
 
 
 5
 Several courts have recently held that expert eyewitness identification testimony can be helpful to the trier of fact. See United States v. Downing, 753 F.2d 1224, 1230-32 (3d Cir. 1985) (citing cases); Moore, 786 F.2d at 1312. Contra Christophe, 833 F.2d at 1299-1300 (holding that cross-examination of eyewitnesses is sufficient and that proffered expert eyewitness identification theory is not generally accepted); United States v. Hudson, 884 F.2d 1016, 1023-24 (7th Cir. 1989) (holding that expert testimony was properly excluded as unhelpful to the jury).
 
 
 6
 This case presents no occasion for stating definitive criteria pertaining to expert testimony about the accuracy of eyewitness identification. It is enough to hold that when casual eyewitness testimony is not critical in the determination of guilt or innocence, the district court's decision to exclude the expert's testimony is not an abuse of discretion. Moore, 786 F.2d at 1313. See also United States v. Smith, 736 F.2d 1103, 1107-08 (6th Cir. 1984). Applying this principle, we conclude that the district court did not abuse its discretion by excluding the expert's testimony. The determination of guilt did not depend solely on casual eyewitness testimony. Three of the witnesses identifying Carbarcas-A had known him for years. The fact that these witnesses identified Carbarcas-A as an individual involved in the drug conspiracy rebuts the claim that excluding the expert's opinion affected the outcome of the trial. Cf. Smith, 736 F.2d at 1107-08.
 
 II
 
 7
 Carbarcas-A seeks dismissal of the indictment, claiming that postindictment delay in bringing him to trial violated his Sixth Amendment right to a speedy trial and Federal Rule of Criminal Procedure 48(b). The district court directed the magistrate to conduct a hearing on this issue and subsequently accepted the magistrate's recommendation against dismissal.
 
 
 8
 On July 16, 1985, a grand jury indicted Carbarcas-A. Colombian authorities did not arrest him until December 1989 and did not extradite him to the United States until July 2, 1990. The trial was originally calendared for October 1990 but did not occur until June 1991 as a result of continuances requested by Carbarcas-A. To determine whether postindictment delay violates a defendant's constitutional right to a speedy trial, Barker v. Wingo, 407 U.S. 514, 530 (1972), prescribes "a balancing test, in which the conduct of both the prosecutor and the defendant are weighed." The Court identified four factors that should be considered along with other relevant circumstances in assessing whether a defendant has been deprived of his right. These factors are the length of the delay, the reasons for delay, whether the defendant asserted his or her right to a speedy trial, and prejudice to the defendant. Unless a delay is "presumptively prejudicial" courts need not consider the other factors. Barker, 407 U.S. at 530.
 
 
 9
 Five years and three months passed between the date of the indictment and the original trial date. The government does not dispute that the delay was long enough to trigger investigation of the other factors. See Barker, 407 U.S. at 533 (stating that five-year delay was "extraordinary").
 
 
 10
 We must next consider the justification for the delay.
 
 
 11
 A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.
 
 
 12
 Barker, 407 U.S. at 531 (footnote omitted).
 
 
 13
 The district court's finding that the government had a valid reason for delay is amply supported by the evidence. The record discloses the following information provided by the Office of International Affairs, Criminal Division for the Department of Justice:
 
 
 14
 There were no extraditions by Colombia to the United States during the 1985-Aug. 1989 period. In 1985 the Colombian Judiciary (Justice Ministry in Bogota) was decimated by an attack of the M-19 guerrillas, and records were burned which required months of restoring. In addition, during 1986-87, the Colombian Supreme Court declared the existing Extradition Treaty with the U.S. unconstitutional. In 1989, August, then President Barco declared a Presidential Decree under which extraditions were again authorized and the U.S. began to receive fugitives whose extraditions we had requested.
 
 
 15
 With respect to the third Barker factor, we do not disturb the court's finding that Carbarcas-A's failure to assert his right to a speedy trial is a neutral factor. The evidence as to whether he knew of his indictment before his arrest is inconclusive.
 
 
 16
 Whether a delay prejudices a defendant must be viewed in light of the fact that the right to a speedy trial seeks"(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. at 532. Carbarcas-A was incarcerated seven months in Colombia and only three months in the Western District of North Carolina before his original trial date. In view of the inability of the Department of Justice to extradite him, the imprisonment in Colombia cannot be weighed against the prosecution in the balancing test that Barker prescribes. See 407 U.S. at 530.
 
 
 17
 Carbarcas-A argues that the delay impaired his defense, as it resulted in the loss of medical records that would have established an alibi and telephone records that may have revealed that one of the coconspirators did not make the telephone calls to him alleged by the government. The prosecutor was not responsible for either loss.
 
 
 18
 When a loss occurs, "there is no basis either in logic or precedent for assuming that the lost evidence would necessarily have been exculpatory." United States v. Koskotas, 888 F.2d 254, 257 (2nd Cir. 1989). A finding that this evidence would have helped Carbarcas-A is speculative. "With respect to the impairment to his defense, the defendant cannot merely allege possible prejudice, he must show that his defense was impaired such that he suffered actual and substantial prejudice as a result of the delay." United States v. Koller, 956 F.2d 1408, 1414 (7th Cir. 1992). Carbarcas-A has not met this burden. He could have introduced his doctor's testimony but made a tactical decision not to do so without the medical records. His decision not to use other means available to prove facts he claims the lost evidence would have revealed is relevant when determining prejudice.
 
 
 19
 The delay caused by the continuances Carbarcas-A sought cannot be attributed to the government. See Barker, 407 U.S. at 529; United States v. Loud Hawk, 474 U.S. 302, 316-17 (1986).
 
 
 20
 Carbarcas-A also appeals the district court's refusal to dismiss the indictment under rule 48(b). This rule provides that if there has been an unnecessary delay in presenting a charge to a grand jury, filing an information, or bringing a defendant to trial, the court may dismiss the indictment, information or complaint. The district court's decision to deny a rule 48(b) motion is reviewed for abuse of discretion. United States v. Loe, 586 F.2d 1015, 1019 (4th Cir. 1978). A court may consider the same factors in deciding whether to dismiss on the basis of rule 48(b) as it considers in deciding whether the Sixth Amendment has been violated. See United States v. Becker, 585 F.2d 703, 708 (4th Cir. 1978).
 
 
 21
 We conclude that Carbarcas-A has failed to prove violation of either his Sixth Amendment right to a speedy trial or rule 48(b). The district court properly denied his motion to dismiss the indictment.
 
 III
 
 22
 Carbarcas-A assigns error to two evidentiary rulings. He protests the denial of his motion to suppress pretrial photographic identifications made by Mathis, who testified that he saw Carbarcas-A several years before the trial. The magistrate conducted a hearing on this issue and found that the photographic arrays were not suggestive. He concluded, however, that the police showed the arrays in an improper manner. Upon review of the magistrate's recommendations and the evidence presented at the hearing, the district court determined that the evidence was admissible. For reasons adequately stated in the district court's opinion, App. 361-70, we find no error.
 
 
 23
 Carbarcas-A also assigns error to the admission of information shown on his fingerprint card, contending that the government violated Federal Rule of Criminal Procedure 16. He claims the government should have produced the card prior to trial in response to his request for copies of all statements that he had made to a government agent.
 
 
 24
 The incident giving rise to this assignment of error occurred after counsel for Carbarcas-A showed that the defendant's name on his passport was spelled with a u while the name on the indictment was spelled with an a and that the address on the passport differed from an address in evidence. These differences were elicited to prove that the police had arrested the wrong man.
 
 
 25
 The prosecutor then obtained from the marshal's office CarbarcasA's fingerprint card which showed that his date of birth was the same as the date in the passport. The marshal who fingerprinted the defendant testified that Carbarcas-A had furnished the date reported on the card.
 
 
 26
 Prior to trial, the government permitted Carbarcas-A's attorney to inspect its file. The fingerprint card was available in the marshal's office to both the government and the defense.
 
 
 27
 We need not parse rule 16 to determine whether statements recorded on a fingerprint card fall within the purview of the rule under the circumstances giving rise to the issue in this case. Error, if any, is appropriately governed by rule 52(a), which provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."
 
 
 28
 Because we uphold the continuing criminal enterprise conviction in count 36, the case is remanded with directions to the district court to set aside the sentence imposed for conspiracy, count 1. See Garrett v. United States, 471 U.S. 773, 794 (1985); United States v. Porter, 821 F.2d 968, 978 (4th Cir. 1987). In all other respects, the judgment is affirmed.
 
 COUNT 1 REMANDED; OTHERWISE AFFIRMED