Jennifer **MANNINO, a minor, by and through her next friend and parent and natural Guardian, Richard Mannino, Plaintiff-Appellant,**

v.

**INTERNATIONAL MANUFACTURING COMPANY, Defendant-Appellee.**

No. 79–3607.

United States Court of Appeals, Sixth Circuit.

Argued April 13, 1981.

Decided June 9, 1981.

As Amended July 21, 1981.

Comp.Laws § 702.93 (1980).

Michael Shafran, Bruner & Shafran, Cleveland, Ohio, for plaintiff-appellant.

Michael R. Gallagher, Gallagher, Sharp, Fulton, Norman & Mollison, Beverly Harris, Cleveland, Ohio, for defendant-appellee.

Before LIVELY and JONES, Circuit Judges; and GILMORE, District Judge.*

GILMORE, District Judge.

The basic issue in this case is whether the trial court erred when it excluded the testimony of plaintiff's expert, Dr. Eugene Bahniuk. The Court concludes it did, and reverses and remands for trial.

On August 21, 1976, Jennifer Mannino, age 14 months, was a passenger in an automobile being operated by her mother, Barbara Mannino. Jennifer was seated in an

infant car seat placed in the cross-bar of the front seat, middle position of the car. The car was involved in an accident, and when the impact occurred, the strap of the baby seat in which Jennifer was seated broke and she was forcefully thrown over the seat and into the dashboard suffering injuries for which this action was brought. The infant seat, which is the subject of this litigation, was purchased by Barbara Mannino in a used condition from an unknown woman who no longer required the seat for her child. At the time Barbara Mannino bought the seat from this woman, the woman furnished an instruction sheet on its use.

At no time during the trial was the infant seat available for inspection, it having been disposed of immediately after the accident. There was purported identification of the seat through the testimony of the minor's parents and her grandmother. There was a clear factual issue as to the seat model, and as to whether the defendant was even its manufacturer.

During the jury trial, plaintiff offered the testimony of Dr. Bahniuk, a biomechanical engineer, who received his Ph.D. in this field in 1970, and, at the time of the trial, taught at Case Western Reserve University. Dr. Bahniuk testified that the seat was improperly designed for its intended purpose, and that proper testing would have shown deficiencies which would have enabled defendant to improve its design to compensate for those deficiencies.

After a lengthy voir dire, the trial court excluded the testimony of Dr. Bahniuk, holding, inter alia:

"... we are confronted here with the expertise, in the first instance, of this witness; secondly, the qualification of the authority upon which he purportedly relies in formulating his opinion, and whether or not the plaintiff has qualified the reports, journals, and other documentation within the language of 703 as defined by (Weinstein) namely:

* Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

'As regards other experts, before they will be permitted to testify upon the basis of facts not admissible in evidence, the Court will have to find pursuant to Rule 104(a) that the particular underlying data is of a kind that is reasonably relied upon by experts in a particular field in reaching conclusions. . . .

'Since Rule 703 is concerned with the trustworthiness of the resulting opinion, the Judge should not allow the opinion if the expert can show only that he customarily relies upon such material, or that it is relied upon only in preparing for litigation. He must establish that he, as well as others, would act upon it for purposes other than testifying in a law suit.'

\* \* \* \* \* \*

". . . apart from the testimony being to a great degree rambling and disoriented and disorganized, my primary considerations are directed to the fact that his opinion is predicated upon material that has not been properly qualified as the basis upon which an expert opinion may be predicated; that he has not established through his testimony a defective design, manufacturer or sale; nor has he established any causal relation between the accident and any alleged defective design, manufacture, or sale.

"Under these circumstances, . . . apart from the fact that there is nothing in evidence that would identify the subject of this lawsuit,—namely a defectively designed baby seat—apart from that, the expert has not qualified (sic) to express an opinion and to permit him upon the voir dire that has been presented to me here today to testify before the jury would present a highly prejudicial situation. So that is the status of the expert." Appendix, pages 123 through 125.

At the end of the plaintiff's case, the trial court directed a verdict of no cause for action, and discharged the jury.

■ We start with the fundamental proposition that the determination of the qualifications of an expert is largely within the discretion of the trial court, and unless it has erred or abused that discretion, its determination is not subject to review. However, where the trial court has erred in excluding expert testimony, appellate courts will not hesitate to step in. Wigmore says:

". . . In practice, the rulings below are constantly reconsidered above, under the guise of ascertaining whether the 'discretion' has been 'abused' . . ." 2 *Wigmore on Evidence, 3rd Ed.* ¶ 561, page 642.

■ In *Blatt v. Western Airlines*, 155 F.2d 850 (CA10 1946), the Court pointed out that, while it is not the province of appellate courts to review the discretion of trial courts if exercised within legal bounds, it is the duty and right of appellate courts to determine whether, in the exercise of the discretion committed to it, the trial judge applied correct legal standards. Here we feel the trial court did not.

■ Rule 702 of the Federal Rules of Evidence[1] is to be broadly interpreted. The Advisory Committee's notes explain that whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier of fact. The rule is broadly phrased, and an expert is viewed, not in a narrow sense, but very broadly. As the notes point out:

". . . Thus within the scope of the rule are not only experts in the strictest sense of the word, e. g. physicians, physicists, and architects, but also the large group sometimes called 'skilled' witnesses, such as bankers or land owners testifying to land values."

---

1. "If scientific technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or educa-

Weinstein[2] points out that the trial judge should not rely on labels, but must investigate the competence a particular proffered witness would bring to bear on the issues, and whether it would aid the trier of fact in reaching its decision. He states that the expert need not have complete knowledge about the field in question, and need not be certain. He need only be able to aid the jury in resolving a relevant issue.

A leading case prior to the Federal Rules of Evidence is *Jenkins v. United States*, 307 F.2d 637 (D.C.Cir. 1962 (en Banc). There, the defendant, in a criminal prosecution, relied solely on the defense of insanity, and the trial judge excluded the testimony of three defense psychologists, because psychologists lacked medical training. The Court of Appeals reversed. It said:

"... The principle to be distilled from the cases is plain: if experience or training enables a proffered expert witness to form an opinion which would aid the jury, in the absence of some countervailing consideration, his testimony will be received." *Id.* at 644.

In *Bratt, supra,* Judge Murrah, in a pre-Federal Rules of Evidence opinion, discussed the subject. He pointed out:

"It must be remembered that the court is not the judge of the quality of the evidence, nor does the witness perform the function of a juror—he can only contribute something to the jury's information and if he can, he should be permitted to do so ..." *Id.* at 854.

In *Knight v. Otis Elevator Co.*, 596 F.2d 84, (CA3 1979), the trial judge prohibited an expert witness, who was a consulting chemist and an engineer specializing in materials, engineering and safety, who had experience in machine guarding, and who had designed button guards to prevent inadvertent activation of machinery, from expressing an opinion as an expert on whether an unguarded elevator button constituted design defect, because he had no background in the design and manufacture of elevators. The Court of Appeals, recognizing that the trial judge's discretion in admitting or excluding expert testimony ordinarily would not be reversed, did reverse.

"The words of the late Judge Staley still ring true as he asserted in *Trowbridge v. Abrasive Company of Philadelphia*, 190 F.2d 825, 839 n.9 (3d Cir. 1951):

'If we were to declare as a rule of law that one must actually have practical experience in a given industry in order to qualify as an expert in litigation involving its products, we might very well place an onerous burden on plaintiffs in some cases. Where the industry is small and tightly knit, it may be very difficult for the plaintiff to obtain the services of an expert currently employed therein, and it might be equally difficult to find someone who was formerly employed in the industry. But the key experts of an industry would normally be available to the defendant.' ..." *Id.* at 88.

In *United States v. Barker*, 553 F.2d 1013 (CA6 1977), this Court pointed out that a proposed expert should not be required to satisfy an overly narrow test of his own qualifications. It said:

"According to the Federal Rules of Evidence, a proposed expert witness 'should not be required to satisfy an overly narrow test of his own qualifications' ... An expert need not have certificates of training nor membership in professional organizations.... Nor need he be, as the trial court apparently required, an outstanding practitioner in the field in which he professes expertise. Comparisons between his professional stature and the stature of witnesses for an opposing party may be made by the jury, if it becomes necessary to decide which of two conflicting opinions to believe. But the only question for the trial judge who must decide whether or not to allow the jury to consider a proffered expert's opinion is 'whether his knowledge of the sub-

tion, may testify thereto in the form of an opinion or otherwise."

2. *Weinstein's Evidence*, Weinstein & Burger, Volume 3, page 702–10 and following.

ject matter is such that his opinion will most likely assist the trier of the fact in arriving at the truth.' ..." *Id.* at 1024.

Dr. Bahniuk has a Ph.D. in bio-mechanical engineering. He is an Associate Professor of Engineering at Case Western Reserve University. He testified that biomechanics is the art of applying engineering techniques to the study of the human body, and that he had studied forces involved in automobile accidents, and by the use of applied physics understood the effect of various forces on the human body. He testified that he did research in the automobile accident area, testing whiplash injuries to humans, and that he had been exposed to child restraint systems by attending a seminar in automotive safety conducted by General Motors in 1973. He also is involved on a continuing basis in the Bio-Mechanics Laboratory at Case Western University where he works with orthopedic physicians studying injuries to the spine and neck. He has had experience in studies of the dynamics of impact on people in automobile accidents.

■ Under the Federal Rules of Evidence, the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth. The weight of the expert's testimony must be for the trier of fact.

■ It appears here that the trial judge misconceived his function in determining the qualifications of the expert. Based upon his academic training, background, and experience, it is clear that Dr. Bahniuk had sufficient qualifications to testify as an expert under Rule 702. The weight to be given his testimony was not for the judge, but the jury. Here the trial judge weighed the expert's testimony rather than determining his qualifications. It was therefore error for the trial judge to refuse to allow the witness to testify. He clearly had the minimal qualifications to express his expert opinion. See *United States v. Barker; Knight v. Otis Elevator Co.; Bratt v. Western Airlines.* (*Supra*).

The second question relates to the basis of Dr. Bahniuk's opinion. Rule 703 provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts and data need not be admissible in evidence."

The trial court found that Dr. Bahniuk's opinion was predicated upon material that had not been properly qualified as the basis upon which an expert opinion could be predicated, and that he had not established through his testimony a defective design, manufacture, or sale, nor any causal relationship between the accident and any alleged defective design, manufacture, or sale. He also found that there was nothing in the evidence that would identify the subject of the lawsuit, namely a defectively designed baby seat.

In making this determination, the trial court relied heavily upon Weinstein's comments to Rule 703 of the Federal Rules of Evidence, where he says that a judge should not allow an opinion, if the expert could show only that he customarily relies upon such material, or that it is relied upon only in preparing for litigation. The trial court found that the expert's opinion was predicated upon material that had not been properly qualified as the basis upon which an expert opinion could be predicated. In this, it erred.

■ The purpose of Rule 703 is to make available to the expert all of the kinds of things that an expert would normally rely upon in forming an opinion, without requiring that these be admissible in evidence. Under the Rule, the expert is free to give his opinion relying upon the types of data an expert would normally use in forming an opinion in his area of expertise. In short, through Rule 703, the law is catching up with the realities of professional life.

Discussing expert testimony, the Fifth Circuit, sitting en banc in *United States v. Williams*, 447 F.2d 1285 (CA5 1971), said, in a criminal case:

"... The rationale for this exception to the rule against hearsay is that the expert, because of his professional knowledge and ability, is competent to judge for himself the reliability of the records and statements upon which he bases his expert opinion. Moreover, the opinion of expert witnesses must invariably rest, at least in part, upon sources that can never be proven in court. An expert's opinion is derived not only from records and data, but from education and from a lifetime of experience. Thus, when the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, *that opinion is regarded as evidence in its own right and not as hearsay in disguise.*" *Id.* at 1290 (Emphasis added).

The Advisory Committee's notes to Rule 703 emphasize that the facts and data upon which expert opinion is based may be derived from any one of three sources. The first is first-hand observation, and the second method is the use of the familiar hypothetical question or having the expert attend the trial and hear the testimony establishing the facts. The third source, according to the Committee, is:

"... the presentation of data to the expert outside of court and by his own perception. In this respect, the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions, and to bring the judicial practice in line with the practice of the experts themselves when not in court...."

On voir dire examination, Dr. Bahniuk testified at great length about the effect of force upon the human body. He opined, among other things, that dynamic testing, rather than static testing, should have been done on the car seat, and that the head and neck regions of a child were vulnerable areas. He based his opinion upon his experience with bio-mechanics, upon his reading, upon his attendance at seminars, and upon special articles in the field that he had considered. He found that the designer of the car seat did not act reasonably.

The trial transcript supports this Court's conclusion that Dr. Bahniuk should have been allowed to testify. Pertinent parts of his testimony that support this conclusion are set forth in the margin.[3]

---

3. In reference to a seminar sponsored by General Motors concerning occupant safety in automobiles, Dr. Bahniuk stated that it provided a basis for his expert opinion. The transcript follows.

Q. Now did they—at the seminar were you exposed to any of the scientific considerations amicable to child safety design?
A. Yes.
Q. Child seat safety design?
A. Yes.
—Appendix Page 88
Q. Did you rely upon this publication and the seminar in formulating your assessment of safety and your notions of safety in the field of automobile child restraint systems?
A. This is one of many bits of information.
Q. What other sources of information did you rely upon prior to being involved in this lawsuit upon which you base your opinions?
A. Well, a number of things. First of all, I have been involved in study of accidents and injuries to people for a long period of time. The concepts of injury in this, whether it is an automobile accident or whether it is a home accident, many of them are the same.... There are certain concepts there about the strength of materials in the human body, the forces involved, the engineering principles of how these forces are applied to the human body are basic to injury. Whether or not one is flying through the air because you slip and the force of gravity causes you to hit the floor and you impact and you break a bone, those concepts in general are similar to impacting say the front of a car.

\* \* \* \* \* \*

A. I did refer to the other literature in the past with regard to automobile accidents.
Q. Let me interrupt you, Doctor. The literature that you are refering to now is literature that is independent of the literature that I may have presented to you?
A. That is right. Specifically, I think one that was very important that I referred to in the past and I used here and presented to you and to Mr. Gallagheer was an SAE, Society of Automotive Engineers, a group of papers on automobile accidents. Appendix Pages 90 and 91

\* \* \* \* \* \*

■ It is clear that there was an adequate basis for his opinion within the meaning of Rule 703. He relied upon studies, his own experience in dynamic testing, his background as a bio-mechanical engineer, and upon literature and information furnished him by plaintiff's attorney. The fact that much of this was hearsay which would probably not be admitted into evidence has nothing to do with the case. The question is whether it is the type of material that an expert would rely upon, and there is no showing in this record that it is not. In fact, it was the type of material that expert witnesses often rely upon in forming opinions.

In addition, the trial judge's concern as to whether the baby seat at issue was one of the baby seats in the catalogue that the expert testified about had nothing to do with the expert's opinion.

■ It is true that there was a serious question as to whether the baby seat in question was one manufactured by the defendant, but that was a question of fact for the jury and had no bearing upon a determination of whether the expert's opinion was admissible under Rule 703.

■ The trial judge misconceived his responsibilities under Rule 703. Great liberality is allowed the expert in determining the basis of his opinions under Rule 703. Whether an opinion should be accepted is not for the trial judge. That is for the finder of fact. Here the trial judge substituted himself for the finder of fact by finding that the witness did not have an adequate basis for his opinion. There is sufficient evidence in this record to find that the expert did have an adequate basis for his opinion. The trial judge erred in excluding the testimony.

The error in excluding the expert's opinion testimony was sufficiently prejudicial to require reversal and remand.

In view of the fact the case will have to be tried again, the Court will comment on other claims of error.

■ Appellant claims that the District Court was in error in refusing to allow plaintiff to amend his complaint on the morning of trial. Plaintiff's attorney thought that he had properly alleged a case in strict liability as well as in negligence, but the trial judge held that he had not and gave the plaintiff the opportunity of proceeding on the negligence count only or dismissing the case and starting all over again. The plaintiff chose to go on the negligence count only.

On remand, the trial judge should allow amendment of the complaint and allow defendant sufficient time to answer the amended complaint. The trial on remand should be upon theories of both strict liability and negligence. Sufficient time should

Q. Now moving on here, are there any other independent sources of information upon which you relied in formulating your assessment of child restraint safety?
A. Well, I guess I would have to say yes; but this is to say, a whole body of literature in the area of bio-mechanics that in some way touch upon my profession. Appendix Page 92

* * * * * *

Q. Professor, are there specific instruments, physical instruments upon which you rely in assessing the safety or danger of a product?
A. Well, we had—I had several tests mechanics, for instance, that I have used.
If you are talking about specifically, we had a method for impulsing a person to simulate whiplash injuries. We also had a sled which we used to study the dynamics of people's motion, person motion in a car when it impacted.

But the instruments that are used in general in the field of bio-mechanics are numerous. We use G machines, standard engineering testing machines. A machine we have for instance measures the strength of bones and so on. Appendix Page 93
Finally, when asked about the basis for his opinion, Dr. Bahniuk testified as follows:
A. Well, the basis for my opinion is also based on what will happen in an accident, dynamics of an accident are very involved and that it is difficult to, say, prove the safety of an item without such testing.
If the device is stated to be a safe automobile seat and to be used in automobile accidents and to restrain a person safely; he has to be assured that this device will meet that requirement. The best way to do this is by testing. And I think more than static testing but by dynamic testing.... Appendix Page 108.

be given each side for discovery and preparation on these issues.

This Court expresses no opinion upon appellant's claim that the District Court erred when it excluded certain medical testimony during trial.

Reversed and remanded. Appellant may tax costs.