917 F.2d 24
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jennifer AMATO, by her next friend Diana AMATO, Plaintiff-Appellant,
v.
SYNTEX LABORATORIES, INC. and Pet, Inc., Defendants-Appellees.
 No. 89-2348.
 United States Court of Appeals, Sixth Circuit.
 Oct. 26, 1990.
 
 Before KENNEDY and KRUPANSKY, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Diana Amato (appellant) appeals dismissal of her product liability action against defendants-appellees Syntex Laboratories, Inc. and Pet, Inc. (appellees). The District Court found that no genuine issue of material fact existed and granted summary judgment in favor of appellees. For the reasons stated below, we AFFIRM.
 
 
 2
 Appellant is the mother of Jennifer Amato, who was born in April 1978. From late April 1978 to February 1979, due to an intolerance of certain forms of nutrition, Jennifer was fed Neo-Mull-Soy infant formula, manufactured by appellees. During this period Jennifer also ate a variety of baby foods and, by the end of that period, was eating some types of table food. From March 1978 through July 1979, Neo-Mull-Soy lacked sufficient chloride content to be nutritionally sound and on August 2, 1979, Neo-Mull-Soy was recalled from stores due to the chloride deficiency.
 
 
 3
 Throughout her life, Jennifer has scored consistently below normal on intelligence tests and has been classified by her school district as educably mentally impaired. Appellant first noticed that her daughter was developing slowly when Jennifer reached six months of age and seemed abnormally quiet and inactive. After watching a television news program on Neo-Mull-Soy infant formula in February 1980, appellant became concerned that a lack of chloride in the formula was responsible for her daughter's condition. On behalf of Jennifer, appellant filed this action on May 31, 1988, against appellees, alleging that Jennifer's ingestion of the defective Neo-Mull-Soy formula caused her disability.[1] Specifically, appellant claims that the formula caused Jennifer to experience hypochloremic or metabolic alkalosis,[2] resulting in delayed physical growth and decreased mental development.
 
 
 4
 On June 16, 1989, appellees filed a motion for summary judgment, contending that appellant's claim presents no genuine issue of material fact. Fed.R.Civ.P. 56(c). The District Court extended the cut-off date for discovery and on September 12, 1989, appellant filed the depositions of several witnesses that she wished to designate as experts for purposes of establishing that Neo-Mull-Soy caused Jennifer's medical problems: Lorraine Cotman, Jennifer's special education teacher; Gertrude Wycech, Jennifer's speech-language pathologist; Patricia Hartwig, Jennifer's school psychologist; Patrick Ryan, a neuropsychologist who has examined Jennifer; and Frederick Goldstein, a professor of pharmacology. None of them is a medical doctor. Appellees, on the other hand, have filed statements from several medical doctors ruling out a connection between Neo-Mull-Soy and Jennifer's disabilities.
 
 
 5
 Appellees maintain that the depositions show that none of the witnesses proffered by appellant can provide a causal link between Neo-Mull-Soy and Jennifer's disability and that summary judgment is appropriate. The District Court agreed, finding a complete failure of proof concerning causation, an essential element of appellant's case. This finding was based upon the District Court's view that appellant's experts are not qualified to testify on the issue of causation and, even if they were so qualified, their statements are inadequate to establish a genuine issue that appellees' product caused Jennifer's condition.
 
 
 6
 When there is a complete failure of proof concerning an essential element of the opposing party's case, there can be no genuine material issue of fact since all other facts are rendered immaterial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see Street v. J.C. Bradford & Co., No. 87-5673, slip op. at 12-13 (6th Cir. Sept. 21, 1989). In reviewing the District Court's conclusion we must apply a de novo standard of review to determine if a genuine issue of material fact indeed exists. Pinney Dock and Transport Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988). In our assessment we must also view the facts and all inferences to be drawn from them in a light most favorable to the opposing party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-159 (1970). Since this is a diversity case, we must apply the substantive law of Michigan where appropriate.
 
 
 7
 Although Michigan law applies in setting the standard of causation that appellant must meet, the Federal Rules of Evidence govern the admissibility of the evidence offered by appellant to meet that standard. See, e.g., McInnis v. A.M.F., Inc., 765 F.2d 240, 244-45 (1st Cir.1985). In particular, expert testimony must meet the requirements of Rule 702 before it can be admitted. These requirements include showing that the expert is qualified and is testifying on a proper subject. Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1208 (6th Cir.1988).
 
 
 8
 It is a "fundamental proposition that the determination of the qualifications of an expert is largely within the discretion of the trial court, and unless it has erred or abused that discretion, its determination" is to be sustained. Mannino v. International Mfg. Co., 650 F.2d 846, 849 (6th Cir.1981); see also Salem v. United States Lines Co., 370 U.S. 31, 35 (1962). To permit expert testimony to be heard by the jury, the trial court must satisfy itself that the proffered witness is "qualified as an expert by knowledge, skill, experience, training, or education." Fed.R.Evid. 702. We conclude that the District Court properly found that the appellant's proffered witnesses were not competent to provide expert evidence on causation in this case where diagnosing a medical condition and its consequential effects are crucial. We need not examine the individual witness' qualifications in detail as their own testimony establishes that each is unqualified to give an expert opinion as to whether Neo-Mull-Soy caused Jennifer Amato's condition.[3]
 
 
 9
 We also find that the opinions offered by appellant's proffered experts lack the necessary factual foundation to be admitted. In order to be admissible, such testimony must be supported by more than qualifications and a subjective opinion that "it is so." We do not suggest that proffered testimony must be accompanied by rigorous step-by-step explanation in order to be admissible. However, there must be some reliable factual basis upon which the opinions are premised and the courts need to evaluate the reasoning process by which "experts" connect data to their conclusions. This is especially necessary in cases such as this one which involve difficult medical questions regarding causation.
 
 
 10
 Applying this liberal test to the testimony offered by appellant's witnesses, we conclude that none of the opinions passes muster. Despite their personal speculations, none of appellant's witnesses provided a relevant medical basis justifying their conclusions that Jennifer Amato's mental impairment was caused by consuming appellees' infant formula.[4] The record reveals that none of those witnesses has ever conducted a medical examination of Jennifer Amato, nor were any of them even aware of whether or not Jennifer had suffered from metabolic alkalosis. In addition, none of the appellant's "experts" knew the dietary history of Jennifer Amato. Appellees' experts, who are medical doctors, stated that it would be necessary to determine what her diet was in order to determine whether a dietary cause existed for her disabilities.
 
 
 11
 Appellant relies almost exclusively on our opinion in Mannino, 650 F.2d 846, in arguing that her "experts" should be allowed to testify on the issue of causation. We find our decision here entirely consistent with Mannino. In that case we advised that, in making the preliminary determination regarding a proffered expert's qualifications, the trial judge should "not rely on labels, but must investigate the competence a particular proffered witness would bring to bear on the issues, and whether it would aid the trier of fact in reaching its decision." Id. at 850 (emphasis added). Being mindful of this test, we believe that the District Court properly excluded the proffered testimony. For the reasons given above, none of the "experts" was competent to reach a conclusion as to the crucial issue of medical causation and no assistance would have been provided to a fact-finder seeking evidence on that issue.
 
 
 12
 By supplying statements from several medical doctors, including two who actually treated Jennifer, to the effect that either Neo-Mull-Soy had not affected Jennifer's development or that it is impossible to determine a link between her disabilities and Neo-Mull-Soy, appellees met the burden imposed on the moving party by Fed.R.Civ.P. 56(c). Thus, to avoid summary judgment appellant must provide more than merely colorable evidence that Neo-Mull-Soy caused Jennifer's disabilities. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986). Viewed in a light most favorable to appellant, without her proffered expert testimony she clearly fails to meet this standard.
 
 
 13
 Because we find that the District Court properly rejected appellant's proffered "expert" testimony we need not reach the issue of whether that evidence, had it been admitted, would have withstood a summary judgment motion.
 
 
 14
 Accordingly, the grant of summary judgment is AFFIRMED.
 
 
 
 [1]
 An action was originally filed by the appellant on February 18, 1982 and dismissed in June of 1984
 
 
 [2]
 "Alkalosis" is defined as a condition "in which the alkalinity of the body tends to increase beyond normal due to [inter alia ] withdrawal of ... chlorides from the blood." Taber's Cyclopedic Medical Dictionary A-55 (C. Thomas ed. 1979). "Hypochloremic" alkalosis is that resulting from chloride deficiency. Id. at H-81. The term "metabolic" alkalosis merely refers to alkalosis occurring in the body's process of transforming food into energy. Id. at M-38. It is accepted that this condition can cause disabilities similar to Jennifer's
 
 
 [3]
 Relevant excerpts from the depositions are as follows:
 Lorraine Cotman (Joint App. at 180)
 Counsel: "You're not trained, licensed or qualified to diagnose the causes of mental impairment, are you?"
 Ms. Cotman: "No, I never claimed to."
 Gertrude Wycech (Joint App. at 188)
 Counsel: "So, would you agree you're not really qualified to state the medical causes of--"
 Ms. Wycech: "I agree."
 Counsel: "--mental impairment?"
 Ms. Wycech: "Medical causes, no, I'm not qualified to discern."
 Patricia Hartwig (Joint App. at 195)
 Counsel: "Okay. Do you have any understanding of what the metabolic process is by which Neo-mull-soy impacts on the mental processes or development of an infant?"
 Ms. Hartwig: "Not in specific, no."
 Patrick Ryan (Brief for Appellees at 18)
 Counsel: "It's not within your area of expertise to determine, to a reasonable degree of medical certainty, whether Jennifer's exposure to a chloride deficient formula in fact caused her disabilities?"
 Mr. Ryan: "No, it's not a causal part of (sic). It is not within my area of expertise, no."
 Dr. Frederick Goldstein (Joint App. at 149)
 Counsel: "Do you have any reasonable medical certainty with which to say that [Jennifer's] weight shows a failure to thrive?"
 Counsel for appellant: "Excuse me, Dr. Goldstein, I'm going to object. He's not qualified to give an expert opinion with a reasonable degree of medical certainty."
 
 
 [4]
 Appellant argues that the District Court "abused its discretion in that it based its opinion [to exclude] solely on the fact that Appellant's experts are not medical doctors." Appellant's brief at 10. This is not true, as the decision to exclude for lack of adequate factual basis is independent of the issue of qualifications. See, e.g., Sterling, 855 F.2d at 1209 (without a medical basis for opinion, formed after performing a medical examination or requisite medical tests, even a doctor's testimony may be excluded)