919 F.2d 140
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Heather ELLISON, Executor of the Estate of Karen Ellison,
Plaintiff-Appellant,
v.
EMPIRE GENERAL LIFE INSURANCE COMPANY (Protective Life
Corporation), Defendant-Appellee.
 No. 89-3879.
 United States Court of Appeals, Sixth Circuit.
 Dec. 3, 1990.
 
 Before MERRITT, Chief Judge, and NATHANIEL R. JONES and WELLFORD, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 In this diversity case, plaintiff appeals from the directed verdict for defendant who denied plaintiff's recovery under her husband's (the "decedent's") life insurance policy based on its claim that no contract existed between it and decedent at the time of decedent's death. Plaintiff contends that the district court erred in excluding the testimony of her expert, Mr. Haig Neville, and in applying the law of the case as set forth in a prior Ohio appellate court proceeding. Because we find that the district court erred in excluding the expert testimony, we reverse and remand.
 
 
 2
 On January 16, 1983, decedent completed part I of an application for a life insurance policy issued by defendant. Part I asked for information about decedent and the type of policy he sought. In addition, decedent completed other application forms, including a medical history questionnaire, and gave the independent agent who sold the policy to him a check for two months' premiums.
 
 
 3
 The agent told decedent that the application would be submitted under defendant's "fast track" procedure. Decedent was told by the agent that he probably would not be required by defendant to have a physical exam before the policy became effective because he had had a medical exam within the previous year. Furthermore, the agent stated decedent was "covered." Nonetheless, the agent scheduled a physical exam for decedent. Four days later, before the exam could be completed, decedent died in an auto accident. His wife promptly filed a claim pursuant to decedent's alleged insurance contract.
 
 
 4
 Defendant denied the claim based on its belief that no contract of insurance existed between it and decedent. Specifically, defendant stated that decedent had to have completed a medical exam before coverage under the policy could begin. Defendant cited language on the reverse side of the "conditional receipt" that the agent gave decedent upon acceptance of two months' premiums. Among other things, the receipt conditioned coverage upon completion of a medical examination, if one was required by defendant, and defendant's determination that decedent was "an insurable risk in accordance with [defendant's underwriting] rules."
 
 
 5
 Plaintiff filed suit in the Court of Common Pleas, Cuyahoga County (Ohio), alleging breach of insurance contract. After extensive discovery, the court granted summary judgment for defendant and plaintiff appealed to the Eighth Judicial District Court of Appeals.
 
 
 6
 The appellate court overruled plaintiff's first two assignments of error and sustained the third to the extent that a fact question was found to exist as to what constituted defendant's medical examination requirements. It remanded the case to resolve the following factual questions:
 
 
 7
 a) Whether decedent's application was submitted under defendant's regular or "fast track" underwriting procedure;
 
 
 8
 b) whether decedent satisfied all of defendant's medical conditions precedent stated in both the application and the conditional receipt;
 
 
 9
 c) whether the medical questionnaire was completed and sent to defendant and, if it was, whether decedent was an insurable risk in accordance with defendant's underwriting rules?
 
 
 10
 The court also made several rulings in the case pursuant to Ohio law. Among other things it found that:
 
 
 11
 a) The conditional receipt was unambiguous and that it expressly conditioned effective insurance coverage on completion of defendant's medical requirements;
 
 
 12
 b) Under Ohio law, insurers may attach conditions precedent to liability insurance and no temporary insurance existed upon decedent's completion of the application.
 
 
 13
 c) The reasonable expectations of decedent, based on statements of the independent agent, are not controlling.
 
 
 14
 d) Nothing the agent said to decedent regarding waiver of a medical exam has any legal effect on the terms of the conditional receipt or application, where those documents explicitly provide that the agent has no right to waive or alter the terms, or in any way binds defendant.
 
 
 15
 e) Defendant did not impede processing of the application or in any way act in bad faith in its processing.
 
 
 16
 Plaintiff then had the case voluntarily dismissed (without prejudice) under Ohio Civil Rule 41(A)(1) and refiled the same lawsuit in the Summit County (Ohio) Court of Common Pleas. Defendant thereafter removed the case to federal court.
 
 
 17
 Pursuant to Federal Rule of Civil Procedure 16, the district court granted defendant's motion to limit the issues for trial to those remanded by the Ohio appellate court, basing its ruling on the doctrine of the law of the case. At the close of plaintiff's case, the court granted defendant a directed verdict, stating that reasonable minds could not find for plaintiff based upon the evidence presented.
 
 
 18
 On appeal, plaintiff's first argument is that the district court erred in applying the doctrine of the law of the case. We find that the district court correctly applied the law of the case to limit the triable issues to those set forth in the Ohio appellate court and to accept the findings of law made by that court.
 
 
 19
 Basically, the plaintiff argues that the law of the case established in a state court should not bind a federal district court sitting in diversity. This proposition is erroneous. The Supreme Court has clearly stated its support for applying law of the case doctrine. In Arizona v. California, 460 U.S. 605, 619 (1983), the Court noted that, while strict application of the doctrine was not appropriate in that case (because the Supreme Court had itself been the court of original jurisdiction), "a fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive" (citations omitted). The doctrine applies where a competent court has decided a rule of law and that issue is raised in subsequent stages of the same case, especially where the parties have had a full and fair opportunity to litigate. In general, the Court justifies application of law of the case doctrine because its application conserves judicial resources, saves adversaries from the expense and vexation of multiple lawsuits, and reduces the possibility of inconsistent opinions. Montana v. United States, 440 U.S. 147, 153-54 (1979).
 
 
 20
 These reasons justify application of the doctrine of law of the case to the case at bar. The case has involved extensive discovery at the state court level, was heard, and then appealed to the state appellate court. Upon remand, the case was further litigated, until plaintiff voluntarily withdrew her case and filed the same action in the state court of another county.
 
 
 21
 In support of her position, plaintiff cites 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice Sec. 404(6) (2d ed. 1988), which states that a federal court need not follow the law of the case declared by a state court when a case is removed on the basis of a federal question. However, in the next line, Moore's explicitly notes that a federal court sitting in diversity should follow a state court's determination of the law of the case.[1]
 
 
 22
 While a reviewing federal court may reopen issues of law decided by a state court if the federal court is satisfied that the state court made a mistake in interpreting state law, Remington v. Central Pacific R.R. Co., 198 U.S. 95, 99-100 (1905), we find no indication that the Ohio appellate court so erred in this case. Accordingly, we hold that the district court correctly accepted the findings of the Ohio appellate court and limited the issues at trial to those remanded by that court.
 
 
 23
 As to plaintiff's second argument, we find merit and reverse the court below. In a federal diversity action, a trial court's determination of the qualifications of an expert is typically not subject to de novo review. Mannino v. International Mfg. Co., 650 F.2d 846, 849 (6th Cir.1981). On questions of relevancy, "however, where the trial court has erred in excluding expert testimony, appellate courts will not hesitate to step in." Id. Here, we find that the district court incorrectly disallowed the testimony of plaintiff's expert.
 
 
 24
 Rule 702 of the Federal Rules of Evidence states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." This rule is to be interpreted broadly; courts must assess the admissibility of proffered expert testimony on the basis of whether such testimony would assist the trier of fact. Mannino, 650 F.2d at 849. "[I]f experience or training enables a proffered expert witness to form an opinion which would aid the jury, in the absence of some countervailing consideration, his testimony will be received." Jenkins v. United States, 307 F.2d 637, 644 (D.C.Cir.1962) (en banc), cited with approval in Mannino, 650 F.2d at 850.
 
 
 25
 Plaintiff's expert, Mr. Haig Neville, has seventeen years of underwriting and insurance experience. His knowledge of general insurance practices and procedures is unchallenged. The district court disallowed Neville's testimony because it did not see the relevance in having an expert not employed by the defendant testify on the specific requirements of defendant's policy. Specifically, the court stated that "industry practice regarding fast track policies and insurability is not relevant to the issue of whether [the decedent] met [defendant]'s specific requirements ... for fast track policies and insurability."
 
 
 26
 Federal Rule of Evidence 702 permits expert testimony where it "will assist the trier of fact to understand the evidence or to determine a fact in issue." We disagree with the district court's determination that Neville's testimony could not have assisted the jury in understanding the evidence or determining a fact in issue. According to plaintiff's statements in the trial transcript, Neville had reviewed all the requirements of defendant's fast track procedure and was prepared to give an opinion as to whether decedent met those requirements.[2]
 
 
 27
 Furthermore, we hold that Neville's proffered testimony regarding industry practice as to "fast track" underwriting procedures could have been relevant in establishing that defendant's fast track procedure mirrored that of standard industry practice (provided such standard practice exists). At least one commentator and several courts have recognized that permissible inferences may be drawn from expert testimony on industry underwriting practices, without requiring that such testimony be grounded in the specific underwriting rules of the insurer whose policy is at issue. See, e.g. 19 G. Couch, R. Anderson & M. Rhodes, Couch Cyclopedia of Insurance Law Sec. 79:88 (2d rev. ed. 1983) ("local agent or manager acquainted with the grounds on which insurance companies reject applications is competent to testify concerning the usual practice of such companies if he is familiar therewith through actual practice"); Security Benefit Ass'n v. Kibby, 295 S.W. 164 (Ky.1927) (life insurance agents of long experience allowed to testify as to industry practice on accepting applicants with family history of tuberculosis).
 
 
 28
 An expert "need not have complete knowledge about the field in question and need not be certain." Mannino, 650 F.2d at 850. Even if Neville did not have "complete knowledge" regarding defendant's specific fast track underwriting criteria, his testimony could have assisted the jury in understanding industry practice regarding fast track underwriting and what Empire's practices were in respect to this type of policy. From such testimony, a juror could have reasoned that defendant's fast track procedure followed industry practice and, furthermore, that decedent at the time of his death had a valid insurance contract, fast track or otherwise, with defendant in line with the procedures defendant had followed in accepting past applications. For the foregoing reasons, the district court erred in disallowing Neville's testimony.
 
 
 29
 Accordingly, we overturn the district court's directed verdict and remand the case for proceedings not inconsistent with this opinion.
 
 
 
 [1]
 On the other hand where the basis for removal is diversity, the duty under Erie v. Tompkins, of following state law on substantive local matters injects a new flavor. Since the federal court must apply the state's substantive law, it follows that the law of the case pertaining to a state substantive matter must be followed, unless that rule does not reflect applicable state law
 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice Sec. 404(6) (2d ed. 1988) (citing Wichita Royalty Co. v. City Nat'l Bank of Witchita Falls, 306 U.S. 103, 106-07 (1939)).
 
 
 [2]
 Plaintiff's attorney proffered the testimony of the expert, Neville, purportedly a "17 year expert in underwriting and insurance," who, according to the proffer, "ha[d] reviewed all of the requirements of the fast track policy of Empire, ... all of the applications, information that ha[d] been provided from Empire ... and was prepared to make an opinion as to what these requirements were and whether or not they were met for the purposes of this particular policy of Empire...." (Emphasis added). Plaintiff's attorney explained that this testimony was needed to counter witnesses and experts for defendant