951 F.2d 348
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Annalisa CRIBBS, Plaintiff-Appellee,
v.
HOBART CORPORATION, Defendant-Appellant.
 No. 90-2335.
 United States Court of Appeals, Sixth Circuit.
 Dec. 19, 1991.
 
 Before RYAN, Circuit Judge, WELLFORD, Senior Circuit Judge, and HIGGINS, District Judge.*
 WELLFORD, Senior Circuit Judge.
 
 
 1
 Plaintiff, Annalisa Cribbs, was injured when a piece of kitchen equipment manufactured by defendant, Hobart Corporation ("Hobart"), struck her and severed her Achilles tendon. The equipment involved was a device used to transport large bowls of dough, called a bowl truck or dough dolly. The cast metal doughnut shaped device was movable, had four non-motorized wheels on the bottom, and the bowl rested on top.
 
 
 2
 Plaintiff claimed that the product in controversy was defective because it was made with a sharp lower edge, which might have been rounded to prevent the kind of injury she suffered. Pursuant to local Michigan district court rules, the parties agreed to mediate. A panel evaluated the damage at $75,000, which plaintiff indicated was acceptable, but defendant rejected this evaluation and chose to go to trial. The jury returned a $125,000 verdict in favor of plaintiff. Defendant made timely motions for a directed verdict and judgment notwithstanding the verdict, both of which were denied, and Hobart now appeals after the district court ordered defendant to pay costs and attorney's fees incurred as a result of the trial, in accord with local procedure where defendant rejected a mediation award and the court or jury later reached a decision indicating greater damages.
 
 I. EXPERT TESTIMONY
 
 3
 Defendant argues that the testimony of Professor Herbert Alvord should not have been admitted because he lacked qualifications as an expert. Hobart charges that Alvord is a "professional witness" with no experience in the food processing industry or in the design and manufacture of food processing equipment, including the particular device at issue. Specifically, Hobart objected to admitting his testimony because Alvord "lacked relevant 'knowledge, skill, experience, training [and ] education,' and therefore had no 'scientific, technical or the specialized knowledge' that could have assisted the trier of fact...."[1]
 
 
 4
 The district court permitted Alvord to testify, and the determination of the qualifications of an expert is "largely within the discretion of the trial court, and unless it has erred or abused that discretion, its determination is not subject to review." Mannino v. International Manufacturing Co., 650 F.2d 846, 849 (6th Cir.1981). We find no abuse of discretion under Fed.R.Evid. 702 in this case.
 
 
 5
 Among other things concerning his background, Alvord testified that he had retired from teaching at the University of Michigan as "a Professor of Mechanical Engineering" for over thirty years.[2] After graduating from a technical and mining college with a mechanical engineer's degree, Alvord worked as an engineer for five years. He then went to the University of Michigan as a teaching graduate, where he received a Master's Degree. Professor Alvord testified that design of machinery is one of the areas of mechanical engineering. Others included "directing of manufacturing engineering," transfer of heat, combustion of fuels, and a number of other areas within the general heading of mechanical engineering. His "specialty was teaching mechanical designs," and for many years he "worked as a consultant part-time for many of the manufacturing concerns in this general area of the country," including work in the design of products.
 
 
 6
 Professor Alvord testified that the dough dolly in question was a "simple device," and that it "certainly" would be within his area of experience and qualification to design an object of this nature, although he conceded he had no experience in the "food industry."
 
 
 7
 The particular part of the Hobart equipment at issue was a casting at the base, and Alvord claimed experience in designing "hundreds of castings;" he considered himself "to be an expert in the design of castings," and design of castings was the subject matter of several of his courses, several of which were at the graduate level. Professor Alvord has worked as an expert in about forty lawsuits, including six in court, and he estimated about "65 per cent" of this work was for plaintiffs. He testified that "safety is one of the major requirements in the design of a device."
 
 
 8
 Alvord testified as an expert and noted "jagged edges" on the "under surface" of the dough dolly, one like the one at issue, which brought about injury to the Achilles tendon of the plaintiff. His succinct opinion, after examination, was that "this dolly was not satisfactorily designed from the standpoint of safety," because of the hazardous sharp edge that might contact a user's foot. He was of the further opinion that this foreseeable hazard or defect "could have been so easily eliminated" by simply grounding or rounding the edge, or reshaping the casting. His examination included a look at the design drawings of the particular part or casting in question, and his recommended change he felt "should cost very little;" it was a not a "major change."
 
 
 9
 Professor Alvord was permitted to conclude his testimony by stating that the shape of the Hobart device "created an unreasonable risk of injury," and that an Underwriters Laboratory seal of approval did not mean the product was necessarily safe.[3] Defendant developed that Professor Alvord was not a "Registered Professional Engineer" in any state and that he had reservations about jury's passing on or "second guessing" technical engineering design matters. Professor Alvord was not aware of any "applicable governmental or industry standards" which might apply to the design in question, and he reviewed no technical literature in making his evaluation of the Hobart design. He conceded that it would have been safer for plaintiff to have pushed "this dolly from behind rather than pull it," and he was not aware of whether others had been injured in the manner in which plaintiff was.
 
 
 10
 We start with the fundamental proposition that the determination of the qualifications of an expert is largely within the discretion of the trial court, and unless it has erred or abused that discretion, its determination is not subject to review.
 
 
 11
 Mannino, 650 F.2d at 849.
 
 
 12
 We are satisfied that defendant has not demonstrated here an abuse of discretion on the part of the district court in permitting Professor Alvord to testify as an expert witness. See 2 John H. Wigmore, Wigmore on Evidence p 561 (Chadbourn rev. 1979), and we "broadly" interpret Fed.R.Evid. 702. Mannino, 650 F.2d at 849. See United States v. Barker, 553 F.2d 1013, 1024 (6th Cir.1977) ("a proposed expert witness 'should not be required to satisfy an overly narrow test of his own qualifications.' ... An expert need not have certificates of training nor memberships in professional organizations." (quoting Gardner v. General Motors Corp., 507 F.2d 525, 528 (10th Cir.1984))), quoted in Mannino, 650 F.2d at 850.
 
 
 13
 In this case, the trial judge followed the proper standards in exercising its discretion:
 
 
 14
 Under the Federal Rules of Evidence, the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth. The weight of the expert's testimony must be for the trier of fact.
 
 
 15
 Mannino, 650 F.2d at 851. We are mindful that the Fifth Circuit has recently examined this question in some depth, and we are not in disagreement with the following rationale of the majority opinion in Christophersen v. Allied-Signal Corp., 939 F.2d 1106 (5th Cir.1991) (en banc):
 
 
 16
 Is the witness--because of his specialized knowledge, skill, experience, training, or education in the relevant field--qualified to express an expert opinion on the topic at issue? Fed.R.Evid. 702. The Advisory Committee Note accompanying Rule 702 reads the broad language of the rule to permit expert testimony not only by experts carrying formal credentials such as university degrees and professional memberships but also by so-called skilled witnesses, whose experiences permit them to testify with authority on a given topic. The areas of inquiry that expert testimony may address are similarly broad, including scientific and technical questions as well as any other area of specialized knowledge. An expert may testify in this area of expertise "in the form of an opinion or otherwise." This much is rote. The more subtle problem, and our caveat, is that the inquiry into the qualifications of an expert should not be a substitute for scrutinizing an expert's reasoning or methodology. At this stage, the only question for the trial court is whether the expert is generally qualified to render an opinion on the question in issue.
 
 
 17
 Christophersen, 939 F.2d at 1110.
 
 
 18
 In sum, we find no abuse of discretion in allowing Alvord to testify as an expert; we also find no clear error in the district court's conclusion that he was "qualified by education, training and experience." The jury apparently chose to believe plaintiff's expert rather than witnesses presented by defendant who did have extensive experience in the food processing industry and have familiarity with that industry's applicable safety standards. That a greater number of experts with, perhaps, greater specialized knowledge of the device in dispute may have testified for defendant is no basis to set aside the jury verdict in this case. There was competent, prima facie evidence from which a jury might find the device defective and foreseeably hazardous to users.[4]
 
 
 19
 Defendant's motion for a directed verdict and for a judgment notwithstanding the verdict were properly denied because plaintiff did make out a prima facie case of product liability.
 
 
 20
 II. SANCTIONS, FEES AND COSTS TO THE PREVAILING PARTY
 
 
 21
 Rule 2.403 of the 1985 Michigan Court Rules, a prevailing party who has accepted a mediation evaluation of damages may recover his costs and attorney fees from a party who has rejected that evaluation. Defendant argues that this rule is limited to allow recovery only of costs taxable by law and "reasonable attorney fees for services necessitated by the other party's rejection of the mediation evaluation." M.C.R. 2.403(O)(6). Defendant argues further that it is error to allow plaintiff to recover deposition costs, especially those not filed with the district court.
 
 
 22
 At issue, then, was a request of $1375 for Professor Alvord's time after mediation. Alvord did testify that he spent three and a half hours in preparation of his testimony on the case. The district court did explain, however, the bases for the award as to the costs. We approve the allowance for depositions sought by plaintiffs. In the matter of allowance of attorney fees, we find no error in the award of $5,500.00.
 
 
 23
 We, therefore, AFFIRM the decision of the district court in all respects challenged on appeal.
 
 
 
 *
 The Honorable Thomas A. Higgins, Judge, United States District Court for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 In this regard, we must consider Fed.R.Evid. 702:
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 [2]
 He was a full professor for some twenty-two years
 
 
 [3]
 Professor Alvord testified that he noticed no Underwriters Laboratory certificate or seal on the product in dispute
 
 
 [4]
 In the alternative, we hold that there was "proof sufficient for a reasonable jury to balance the magnitude of the risk versus the feasibility of other design alternatives, or otherwise to weigh the 'unreasonableness' of risks arising from" the defendant's design and manufacture of the device in question. Siminski v. Klein Tools, Inc., 840 F.2d 356, 358 (6th Cir.1988) (utilizing standards of product liability under Michigan law, particularly Owens v. Allis-Chalmers Corp., 414 Mich. 413, 326 N.W.2d 372 (1982); Prentiss v. Yale Mfg. Co., 421 Mich. 670, 365 N.W.2d 176 (1984))