Kristin Nicole MURPHY, a Minor By her Parents and Next of Friends, Michael MURPHY and Billie Murphy, Appellant,

v.

MONTGOMERY ELEVATOR COMPANY, Appellee.

No. 96–CA–0938–MR.

Court of Appeals of Kentucky.

Oct. 17, 1997.

Michael W. Troutman, Lexington, for Appellant.

Spencer D. Noe, Lexington, for Appellee.

Before BUCKINGHAM, GUDGEL and HUDDLESTON, JJ.

## *OPINION*

BUCKINGHAM, Judge.

Kristin Nicole Murphy (Murphy), by and through her parents, appeals from a summary judgment entered by the Fayette Circuit Court in favor of Montgomery Elevator Company (Montgomery) on Murphy's complaint for damages against Montgomery for injuries that she suffered on an escalator in Hess's Department Store (Hess's) in Lexington in 1989. For the reasons set forth hereinafter, we reverse and remand.

On April 18, 1989, Murphy, who was seven years old at the time, got on an escalator in Hess's with her mother, grandmother, and older sister. When Murphy turned to ask her mother a question, her foot went into the side of the escalator and became trapped, causing her injuries. Murphy filed her complaint in the trial court against Hess's, the owner of the escalator; Westinghouse Elevator Company (Westinghouse), the company that maintained the escalator; and Montgomery, the manufacturer of the escalator, alleging strict liability and negligence.

The escalator was manufactured in 1971 and installed in 1972. Montgomery had installed a sign on the escalator which stated "Hold Handrails," and another sign had later been posted by another entity at the top of the escalator advising the rider to "face forward" and "keep shoes and sneakers away from side."

Murphy's claims for damages against Hess's and Westinghouse were settled prior to trial, and the trial court awarded summary judgment to Montgomery shortly before a jury was to be empaneled to hear the case. In awarding summary judgment to Montgomery, the trial court held that

> Plaintiffs' only attempt to rebut the presumptions in KRS 411.310(1) and (2) must fail because the Court finds as a matter of law that John B. Schroering is not qualified to express an opinion on the design, manufacture, and maintenance of escalators and there being no other evidence whatsoever, the presumption must prevail....

Murphy contends that the trial court erred in disallowing Schroering as an expert witness and in holding that there were no genuine issues of material fact to be submitted to a jury.

Murphy's first argument is that the trial court abused its discretion in not accepting Schroering as an expert witness.[1] Schroering holds a master's degree in mechanical engineering, is a professional registered engineer in Kentucky and Tennessee, and is a certified safety professional approved by the Board of Certified Safety Professionals of the Americas. He has been awarded a patent on equipment design, has been a Director of Engineering for Industrial Services of America, has worked as an independent consultant in the engineering and safety disciplines, and has worked as an engineer on a number of projects which dealt with moving machinery and designing safety components for that machinery. Schroering has also served as an expert witness in several lawsuits involving injuries on escalators and has testified on three different occasions in lawsuits similar to this one.

Schroering testified in his deposition that the warning signs on the escalator at Hess's were inadequate and did not alert users of the hazards involved. He also testified that the escalator was defective and dangerous due to the lack of skirt stiffeners and silicone usage. Schroering further testified under cross-examination that he did not consider himself to be an expert on the design, manufacture, servicing, and maintenance of escalators, but he did state that he was an expert on the safety of escalators.

 It is within the discretion of the trial judge to decide the qualifications of expert witnesses, and such a ruling is seldom disturbed on appeal. *Gentry v. General Motors Corp.*, Ky.App., 839 S.W.2d 576, 578 (1992). However, it was stated in *Mannino v. International Mfg. Co.*, 650 F.2d 846 (6th Cir. 1981):

> We start with the fundamental proposition that the determination of the qualifications of an expert is largely within the discretion of the trial court, and unless it has erred or abused that discretion, its determination is not subject to review. However, where the trial court has erred in excluding expert testimony, appellate courts will not hesitate to step in. Wigmore says:
>
> "... In practice, the rulings below are constantly reconsidered above, under the guise of ascertaining whether the 'discretion' has been 'abused'...." 2 *Wig-*

---

1. Kentucky Rules of Evidence (KRE) 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

*more on Evidence, 3rd Ed.* ¶ 561, page 642.

*Id.* at 849.

█ As in *Gentry, supra,* we conclude that the trial court abused its discretion in refusing to allow the witness to be qualified as an expert. The mere fact that Schroering's area of expertise may not lie in designing or manufacturing escalators does not mean that he is not qualified to testify as an expert witness in this case. In *Mannino, supra,* the Sixth Circuit addressed a similar situation in this manner:

In *Knight v. Otis Elevator Co.,* 596 F.2d 84, (C.A.3 1979), the trial judge prohibited an expert witness, who was a consulting chemist and an engineer specializing in materials, engineering and safety, who had experience in machine guarding, and who had designed button guards to prevent inadvertent activation of machinery, from expressing an opinion as an expert on whether an unguarded elevator button constituted design defect, because he had no background in the design and manufacture of elevators. The Court of Appeals, recognizing that the trial judge's discretion in admitting or excluding expert testimony ordinarily would not be reversed, did reverse.

"The words of the late Judge Staley still ring true as he asserted in *Trowbridge v. Abrasive Company of Philadelphia,* 190 F.2d 825, 839 n. 9 (3d Cir.1951):

'If we were to declare as a rule of law that one must actually have practical experience in a given industry in order to qualify as an expert in litigation involving its products, we might very well place an onerous burden on plaintiffs in some cases. Where the industry is small and tightly knit, it may be very difficult for the plaintiff to obtain the services of an expert currently employed therein, and it might be equally difficult to find someone who was formerly employed in the industry. But the key experts of an industry would normally be available to the defendant.' . . ." *Id.* at 88.

*Mannino, supra,* at 850. Schroering was qualified to testify as an expert witness, and Montgomery's attacks on his testimony go to its weight and not its admissibility.

We have reviewed the tape of the hearing before the trial court on Montgomery's summary judgment motion. As Montgomery noted in its brief, the basis of the trial court's order was its finding that Murphy had not rebutted the presumption set forth in KRS 411.310(2). KRS 411.310 provides as follows:

(1) In any product liability action, it shall be presumed, until rebutted by a preponderance of the evidence to the contrary, that the subject product was not defective if the injury, death or property damage occurred either more than five (5) years after the date of sale to the first consumer or more than eight (8) years after the date of manufacture.

(2) In any product liability action, it shall be presumed, until rebutted by a preponderance of the evidence to the contrary, that the product was not defective if the design, methods of manufacture, and testing conformed to the generally recognized and prevailing standards or the state of the art in existence at the time the design was prepared, and the product was manufactured.

Montgomery presented evidence that the escalator was state of the art at the time of its manufacture and installation in the affidavit of its expert, Robert Schaeffer. The trial court orally stated that the presumption contained in KRS 411.310(2) could not be rebutted by Schroering's testimony as Schroering was not and did not claim to be an expert on the state of the art in escalators in 1971 or 1972.

█ Although we commend the trial court for its careful analysis of the motion before it, we believe that it misinterpreted KRS 411.310(2). That statute creates a rebuttable presumption that the product was not defective if its design, methods of manufacture, and testing conformed to the prevailing standards or state of the art in existence at the time the design was prepared and the product was manufactured. The trial court apparently interpreted this to mean that the presumption that the product was not defective would stand unless rebutted by evidence

that the design, methods of manufacture, and testing did not conform to the state of the art in existence at that time. However, we read the plain language of the statute to mean that the presumption may be rebutted by evidence that the product was defective and not that there must be evidence that the design did not conform to prevailing standards or was not state of the art at that time. As we stated in *Ingersoll–Rand Co. v. Rice*, Ky.App., 775 S.W.2d 924 (1988), "[t]he plaintiff must still prove by a preponderance of the evidence that the product in question is defective." *Id.* at 928.

Having reviewed Schroering's testimony, we conclude that there are genuine issues of material fact and that Montgomery's summary judgment motion should have been denied. The judgment of the Fayette Circuit Court is reversed, and this case is remanded for further proceedings consistent herewith.

All concur.