42 F.3d 1388
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles Lynn DUNN, Petitioner-Appellant,
v.
STATE of Ohio, Respondent-Appellee.
 No. 93-3434.
 United States Court of Appeals, Sixth Circuit.
 Dec. 2, 1994.
 
 Before: MARTIN, KRUPANSKY, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Charles Lynn Dunn, a convicted burglar under Ohio law, contested the denial of his pro se petition for a writ of habeas corpus by the U.S. District Court for the Southern District of Ohio. The petitioner alleged that he suffered seven separate constitutional violations during his Ohio trial, and that he endured an additional constitutional wrong during his appeal within the Ohio judicial system.
 
 
 2
 A jury convicted Dunn on September 26, 1986 on two counts of aggravated burglary in violation of Ohio Revised Code [O.R.C.] Sec. 2911.11(A)(3), together with one count of attempted aggravated burglary criminalized by O.R.C. Sec. 2923.02. On October 15, 1986, the petitioner was sentenced to serve two 8 to 25 year terms of incarceration on counts one and two, plus an additional 8 to 15 year imprisonment period on count three, all to run concurrently commencing upon Dunn's release from penal custody in California for other crimes.
 
 
 3
 The trial evidence revealed that during the early morning of February 3, 1985, at least one individual had burglarized two homes on East Schantz Avenue in Oakwood, Ohio. Officers Michael Roth and Thomas Walker of the Oakwood Police Department arrived at the scene of one of the burglaries at about 4:15 a.m. Their patrol car inadvertently crushed a video camera lying in the road which had been stolen from the other burglarized domicile. Tracking footprints in the snow, Officer Walker observed a suspect attempting the forcible entry of a third residence on East Schantz. An inhabitant of that house subsequently surfaced a video camera battery and a flashlight in her yard. Although the perpetrator successfully eluded capture by negotiating a wire fence in a wooded area, Walker was able to describe the suspect as a black male with facial hair who wore an "officer's style" olive drab Army trench coat. Later, a .22-caliber pistol and a man's glove were found near the scene.
 
 
 4
 Sometime after the incident, an informant advised the authorities that Dunn and a named confederate committed the burglaries. Armed with this information, a detective presented a photographic lineup of six African-American men to Walker. This array consisted of pictures of Dunn and five of his associates. Walker selected Dunn's likeness as matching that of the perpetrator, and later identified the petitioner at trial.
 
 
 5
 Pursuant to a warrant, the authorities searched Dunn's residence on March 5, 1985. The items listed in the warrant for seizure were not located.[1] Instead, the investigators impounded a gray leather coat, a photograph of the defendant wearing that coat, and a money clip. The garment and the picture were admitted into evidence over objection, although the money clip was excluded.
 
 
 6
 At trial, a detective attested that an informant, Hylee Howard, apprised him that the pistol located near the crime site belonged to Dunn. The prosecution never produced Howard as a witness. In addition, prosecution witness Jimmie Choice, an associate of the defendant, testified that he had loaned the gloves to Dunn and that Dunn had later notified him that he had dropped one glove while running from the police. Choice also testified that Dunn had requested a ride to a hospital on the day following the crimes, and further identified the pistol in evidence as belonging to Dunn.[2]
 
 
 7
 Dunn, represented by counsel, initiated a timely challenge in the Ohio Court of Appeals, advancing four theories for the reversal of his conviction.[3] The state appellate tribunal rejected all four rationales. The defendant failed to contest that decision in the state Supreme Court, but instead filed a pro se petition for a writ of habeas corpus in the Ohio appellate court, which was dismissed for lack of jurisdiction because Dunn was contemporaneously incarcerated in California. In a subsequent pro se application in the federal district court for a writ of habeas corpus, which was denied for failure to exhaust available state remedies, the petitioner urged eight purported justifications for habeas relief. Those eight averments were:
 
 
 8
 1. The trial judge's refusal to permit supplemental voir dire of a juror who had purportedly displayed bias against the defendant denied him a fair trial.
 
 
 9
 2. Certain actions and comments by the trial judge directed towards the defendant's expert psychological witness violated his right to a fair trial.
 
 
 10
 3. The evidence was constitutionally insufficient to support his conviction.
 
 
 11
 4. The petitioner was convicted upon illegally seized evidence, to wit, the gray leather coat and the photograph.
 
 
 12
 5. The photographic identification procedures used were unconstitutionally suggestive.
 
 
 13
 6. The petitioner's confrontation rights were violated by permitting one state's witness (a detective) to testify to the hearsay statement of another state's witness (Hylee Howard).
 
 
 14
 7. The petitioner's conviction was secured by the use of perjured testimony from Jimmie Choice.
 
 
 15
 8. The petitioner was denied the effective assistance of counsel on appeal.
 
 
 16
 Dunn continued to press these eight arguments throughout the balance of the tortuous litigation leading to this panel.
 
 
 17
 The petitioner next attempted a delayed appeal in the Ohio Court of Appeals, which was rejected because, under Ohio law, "[a] delayed appeal is not available to an appellant where the case sought to be appealed has previously been appealed and determined on the merits." Decision and Entry, J.App. at 165-6. Subsequently, the Ohio Supreme Court summarily denied Dunn's motion to file a delayed appeal. The defendant then lodged a petition for post-conviction relief in the Montgomery County Common Pleas Court, which was denied because the applicant had failed to submit supporting documentation and because the eight claims either had been made, or should have been made, on direct appeal. Dunn challenged this ruling in the Ohio Court of Appeals, which ruled that assignments of error 1 and 2 had been ruled upon on direct appeal and therefore res judicata precluded their reassertion, assignments of error 3 through 7 joined issues which could have been asserted on direct appeal and therefore were also barred by the Ohio res judicata doctrine, and assignment of error 8 lacked merit because the defendant's counsel on direct appeal had not been ineffective and Dunn had not been deprived of constitutionally fair appellate review. Dunn finally exhausted available state court remedies upon the Ohio Supreme Court's March 25, 1992 perfunctory denial of certiorari to review this decision of the Ohio appellate court.
 
 
 18
 Dunn subsequently initiated a second petition for a habeas writ in the district court, which was denied on the merits. A timely appeal to this court followed.
 
 
 19
 Prior to addressing the substance of the petition, this court must initially determine whether any defect of jurisdictional dimensions inhered in the defendant's appeal, as contended by the state. The appellee maintains that Dunn's failure to file objections to the U.S. magistrate's Supplemental Report and Recommendation dated February 26, 1993 (which had been adopted by the district court by entry of final judgment on March 25, 1993) within the ten days of service as allowed by 28 U.S.C. Sec. 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b) constituted a forfeiture of the right to appeal. See United States v. Walters, 638 F.2d 947, 949-50 (6th Cir.1981). However, the Walters waiver rule is a procedural and supervisory device, not a jurisdictional mandate. Thomas v. Arn, 474 U.S. 140, 145-48, 106 S.Ct. 466, 469-71 (1985). Therefore, the reviewing court may excuse the default in the interests of justice, as this panel elects to do.[4] O'Neal v. Morris, 3 F.3d 143, 144 (6th Cir.1993), cert. granted on other grounds sub nom. O'Neal v. McAninch, --- U.S. ----, 114 S.Ct. 1396 (1994).
 
 
 20
 The state's second jurisdictional contention, that Dunn failed to perfect an appeal by neglecting to file a notice of appeal from the lower court's June 9, 1993 order adopting the magistrate's Second Supplemental Report and Recommendation of April 14, 1993 (which responded to Dunn's late-filed objections to the Supplemental Report and Recommendation), must also fail. On April 15, 1993, Dunn appealed in timely fashion the district court's final judgment entered on March 25, 1993. See 28 U.S.C. Sec. 2107(a). Although the district court still retained jurisdiction over the action when it accepted and considered Dunn's tardy objections to the Supplemental Report and Recommendation on March 29, 1993, its jurisdiction to pass upon those objections (which the court had construed as a Rule 60(b) motion) divested upon the entry of Dunn's timely notice of appeal from the judgment. Pittock v. Otis Elevator Co., 8 F.3d 325, 327 (6th Cir.1993) (a motion for relief from judgment initiated under Rule 60(b) may not be decided by the district court subsequent to the filing of an appeal from the underlying judgment because, at that point, the appellate court has assumed jurisdiction over the cause); Brooks v. Celeste, 16 F.3d 104, 108 (6th Cir.1994) (same); see also Lewis v. Alexander, 987 F.2d 392, 394-95 (6th Cir.1993) (such a motion may be decided only if the notice of appeal was untimely). Accordingly, the order of June 9, 1993, which denied the Rule 60(b) motion asserting objections to the Supplemental Report and Recommendation and which adopted the Second Supplemental Report and Recommendation, was null and void. The petitioner's failure to appeal that null order did not render defective his timely appeal of the March 25, 1993 final judgment.
 
 
 21
 As his initial assignment of error, the appellant faulted the Ohio trial court's denial of his motion for supplemental voir dire of a single juror after testimony had commenced, urging that this action deprived him of his constitutional entitlement to a fair trial. At some point during the trial, a juror delivered a note to the bailiff which recited:
 
 
 22
 Yesterday when the jury was being paneled [sic] the defendant [sic] was looking and going through the councils [sic] papers also our questioneirs [sic]. I operate my own business at home and I don't want anyone knowing this unless I tell them. I don't want my house or business to be broken into.
 
 
 23
 Defense counsel argued that this writing reflected a prejudgment of the juror concerning the guilt of the defendant. The state trial court denied the defendant's request to identify the juror who authored the note and to voir dire the juror. Instead, the judge instructed the entire jury that it was appropriate for the defendant to participate with his counsel in selecting jurors, and that the bailiff had impounded all of the rosters of the venirepersons, together with their addresses, from the possession of the Assistant U.S. Attorneys and from the defense counsel, immediately following the jury's enpanelment.
 
 
 24
 The trial court's refusal to accord the requested supplemental voir dire did not deprive Dunn of a constitutionally fair trial. The court correctly ruled that the pertinent juror's note to the judge did not reflect bias on the part of its signatory. It merely expressed the concern of one juror that anyone could have access to his or her home/business address. The charge given in limine was adequately designed to allay this fear. Nothing in the record evidenced a preconceived belief in the defendant's guilt founded upon information obtained outside of the courtroom, or upon any improper prejudice, on the part of any juror.
 
 
 25
 Second, the petitioner averred that the trial judge violated his constitutional right to a fair trial by interrupting and allegedly disparaging his expert psychologist's testimony,[5] with the purported effect of discrediting him in the eyes of the jurors. However, the record disclosed that the trial judge merely admonished the witness several times to answer questions directly, succinctly, and intelligibly, and to avoid lengthy dissertations on peripheral subjects, which directions were encompassed within the trial judge's discretionary authority to manage the proceedings. No constitutional protection applicable to the defendant was compromised by this conduct.[6]
 
 
 26
 The petitioner procedurally defaulted his third through seventh assignments of error in the state courts in that those arguments could have, but had not, been assigned as error upon direct appeal; consequently, they were barred from belated state review by the Ohio res judicata doctrine. E.g., State v. Cole, 443 N.E.2d 169, 170-71 (Oh.1982). Because these contentions were forfeited in the state system by operation of an independent and adequate state procedural rule, the petitioner assumed the burden to prove a justifiable "cause" for this default, as well as resultant "actual prejudice" to his federal rights, as essential prerequisites to federal habeas review.[7] Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565 (1991); Wainwright v. Sykes, 433 U.S. 72, 86-88, 97 S.Ct. 2497, 2506 (1977). Dunn averred that the cause and prejudice requirements were discharged by the alleged constitutional ineffectiveness of his attorney's efforts on direct appeal in the Ohio system, his eighth assignment of error.
 
 
 27
 The Sixth Amendment affords a right to counsel on direct appeal. Brecht v. Abrahamson, --- U.S. ----, 113 S.Ct. 1710, 1720 (1993). This guarantee implies that such representation should be effective. McCoy v. Court of Appeals of Wisconsin, 486 U.S. 429, 435, 108 S.Ct. 1895, 1900 (1988). The constitutional standards of effective representation were clarified by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). A habeas petitioner who claims that his procedurally defaulted theories were forfeited because of attorney malperformance must prove that his counsel's conduct descended beneath Strickland standards. Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645 (1986). Included among the non-exhaustive Strickland catalogue of professional duties owed by an effective counsel to his client is the obligation to apply such skill and knowledge as will render a trial or appeal a reliable adversarial contest. Strickland, supra, 466 U.S. at 688, 104 S.Ct. at 2065. However, broad latitude should be permitted by reviewing courts for the strategic litigation decisions and judgments of lawyers:
 
 
 28
 Judicial scrutiny of counsel's performance must be highly deferential.... Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial [or appellate] strategy." [Citation]. There are countless ways to provide effective assistance in any given case. Id., 466 U.S. at 689, 104 S.Ct. at 2065.
 
 
 29
 Attorney error on appeal, including the failure to assert a particular theory for reversal, ordinarily comprises sufficient "cause" for a procedural default only where the petitioner has proved that some external impediment prevented his or her lawyer from constructing or advancing the claim. Murray, supra, 477 U.S. at 492, 106 S.Ct. at 2647-48. Dunn has failed to do so in the instant action. Rather, the petitioner has merely alleged that his counsel on direct appeal acted incompetently by failing to recognize, or by refusing to assert, assignments of error 3 through 7. However, the Constitution does not endow a criminal appellant with the right to compel his attorney to present every conceivable argument which he (the defendant) believes should be advanced. McCoy, supra, 486 U.S. at 435-39, 108 S.Ct. at 1900-02. See Coleman v. Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566 (1991) (Murray v. Carrier, supra, mandated that an attorney's negligence in failing to assert a purported error in the state appeal did not constitute cause for a default of sufficient magnitude to permit federal habeas review under circumstances where a competent lawyer, who either because of a deliberate litigation strategy or because of inadvertence, neglected to present the omitted federal claim in the state appeal, and such inadvertent or tactical omissions shall not be reviewed by a federal habeas court because in either case the ability of the state courts to enforce their own procedural rules would be compromised).[8] Consequently, Dunn has failed to prove that his appellate attorney performed below constitutional standards of competence, and therefore his eighth assignment of error must be rejected. Resultantly, his procedurally defaulted third through seventh theories in support of his habeas petition must fail because his proof of "cause" for the procedural default (the first of the two essential elements for overcoming such a waiver under Wainwright, supra ) was deficient. Therefore, although the district court ruled that the second requisite branch of the Wainwright test (that the petitioner suffered "actual prejudice" as a result of the procedural default) was not proved, this reviewing court need not reach that issue.[9]
 
 
 30
 Accordingly, the district court's denial of the petition for a writ of habeas corpus is hereby AFFIRMED.
 
 
 
 [1]
 The warrant authorized the confiscation of "[o]ne right handed man's brown suede glove with white fleece lining and one olive colored Army trench coat, officer's style."
 
 
 [2]
 The petitioner emphasized that Choice on cross-examination modified his testimony to concede that he was not a truthful person, that some of his testimony was drawn from police representations made to him because he lacked an independent recollection of some of the facts, and that he was not certain that the gloves at issue were his or that the firearm in evidence was Dunn's. However, these adjustments to his previous attestations on direct examination went to his credibility and to the weight to be assigned to his testimony as a whole, which questions resided within the exclusive province of the jury
 
 
 [3]
 Those four arguments were: (1) certain evidence that Dunn had received medical treatment the day following the burglaries for wounds which could have been incurred while traversing a wire fence was admitted in violation of the physician-patient privilege; (2) the denial of a defense motion for supplemental voir dire of a juror had deprived the appellant of a fair trial; (3) the refusal of the trial court to permit the defendant's expert psychologist to testify to the conclusion that police officers are not better qualified than laypersons to make eyewitness identifications had violated Dunn's right to a fair trial; and (4) the court's comments during the expert's testimony had improperly undermined his credibility and robbed Dunn of a fair trial. The first and third of these theories would later be abandoned by Dunn, whereas the second and fourth would be reasserted as the first and second of the eight assignments of error advanced by Dunn on collateral attack and on delayed appeal, listed below
 
 
 [4]
 The district court had extended Dunn's time to file objections to the Supplemental Report and Recommendation until March 22, 1993. Although the petitioner transferred this document to penitentiary personnel for certified mailing on March 16, 1993, it was not delivered by the postal service to the district court until March 29, 1993. At least one circuit has directed that remonstrances to a magistrate's Report and Recommendation will be deemed punctually submitted if mailed by a pro se convict within the filing period. Dunn v. White, 880 F.2d 1188, 1190 (10th Cir.1989), cert. denied, 493 U.S. 1059, 110 S.Ct. 871 (1990). Accord, Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379 (1988) (the date of a pro se prisoner's tender of his notice of appeal to correctional officials for forwarding to the district court is deemed the date of filing); Smith v. Evans, 853 F.2d 155, 161 (3d Cir.1988) (a Rule 59(e) motion for reconsideration surrendered by a pro se inmate to prison authorities within the filing period shall be construed as timely filed)
 Indeed, in the instant case, the district court on March 29, 1993 accepted and considered the petitioner's late-filed objections to the Supplemental Report and Recommendation, construing that opposition as a motion for relief from judgment under Federal Rule of Civil Procedure 60(b) because the court had already entered judgment on March 25, 1993. In this circuit, where the district court accepted and considered tardily filed objections, the untimeliness of submission will not later preclude appellate review. Patterson v. Mintzes, 717 F.2d 284, 286 (6th Cir.1983).
 
 
 [5]
 The defendant's expert, an experimental psychologist, expressed his opinion as to the various factors involved in making an accurate eyewitness identification. This testimony was offered in an apparent attempt to discredit Officer Walker's percipient identification of Dunn as the burglar
 
 
 [6]
 Indeed, no constitutional guarantee requires the admission of expert testimony concerning eyewitness perception. Moore v. Tate, 882 F.2d 1107, 1110-11 (6th Cir.1989) (per curiam). Therefore, the state trial court would have effectuated no constitutional error even if it had excluded the psychological expert's testimony entirely
 
 
 [7]
 In the alternative, the federal courts may review a state conviction on habeas despite procedural default in the state courts, even in the absence of proof of cause and actual prejudice, where the prisoner has proved that the refusal of such review will yield a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565 (1991). However, a probability of actual innocence is required before habeas review of a procedurally defaulted claim will lie in the absence of satisfaction of cause and prejudice standards. See Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649 (1986); Rust v. Zent, 17 F.3d 155, 162 (6th Cir.1994). The petitioner herein could not meet the Murray/Rust test on the record below, and therefore he was required to prove the elements of cause and actual prejudice
 
 
 [8]
 See generally United States v. Perry, 908 F.2d 56, 59 (6th Cir.1990), cert. denied, 498 U.S. 1002, 111 S.Ct. 565 (1990) (tactical litigation choices are properly left to the sound professional judgment of counsel)
 
 
 [9]
 In order for attorney incompetence to be deemed to have resulted in actual prejudice to the client, the proponent must prove that "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair[,]" which unreliability or unfairness results only where the ineffective representation deprived the defendant of a substantive or procedural legal right. Lockhart v. Fretwell, --- U.S. ----, 113 S.Ct. 838, 844 (1993). See also Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir.1994) ("A constitutional error [alleged on habeas to have caused actual prejudice] is deemed harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict.' ") (quoting Brecht v. Abrahamson, --- U.S. ----, 113 S.Ct. 1710, 1722 (1993))